WILLIAM H. BOOTH *v.* THE BOSTON AND ALBANY RAIL-
ROAD COMPANY.

It is the duty of a railroad corporation to see that there are a sufficient
number of brakemen upon a train when it starts upon its trip; if
this duty is neglected and injury to a servant results therefrom, without
contributory negligence on his part, the company is liable, although the
immediate negligence in starting the train without sufficient brakemen
was that of a co-servant.

Where the negligence of an engineer of a train, in running it, is contribu-
tory with that of the company in not sending a sufficient number of
brakemen, and both together cause an injury to an employee, the negli-
gence of the engineer does not relieve the company from liability.

It is the duty of counsel, if the court misapprehend his meaning, in a
request to charge, to call its attention to the fact; otherwise he is con-
cluded by the interpretation put upon his request by the court.

(Argued February 4, 1878; decided March 19, 1878.)

APPEAL from a judgment of the General Term of the
Supreme Court, in the third judicial department, in favor of
plaintiff, entered upon an order denying a motion for a new
trial and directing judgment upon a verdict.

The action was brought to recover damages for personal
injuries alleged to have been sustained by plaintiff, while an
employee of defendant, by a collision on the road of defend-
ant. The accident was the same by which a fireman and
brakeman were killed, for whose deaths recoveries were had
against defendant. (See *Flike* v. *B. and A. R. R. Co.*, 53
N. Y., 550; *Sprong* v. *B. and A. R. R. Co.*, 58 id., 56.)
This case has once before been to this court. (See Mem., 67
N. Y., 593.)

Plaintiff was an engineer in defendant's employ, and
as such went with a freight train from Greenbush on
the morning of February 3, 1870. This train was pre-
ceded by one under an engineer named Hughes, with
seventeen cars, two brakemen and a conductor. Plain-
tiff's evidence tended to show that three brakemen were

necessary for such a train, and were usually sent. One or two other trains had preceded this one the same morning. There was a head conductor, Rockefeller, who gave the conductors directions as to what cars were to go in the different trains. He also assigned the brakemen to go with the several trains. After receiving instructions, trains were started by and were each under the control of its conductor. Three brakemen had been assigned by Rockefeller, and directed to go with Hughes' train of seventeen cars on the morning in question, but one overslept himself and failed to go, and the conductor of the train started without him and without giving any notice to the head conductor Rockefeller of the absence of the third brakeman. Hughes' train, upon arriving at Chatham, was stopped to take coal upon the engine, as was customary. A train ahead of it still stood at the coal pile taking coal, and Hughes' train stopped and stood behind it for some ten minutes. The conductor and one brakeman got off and went forward to be ready to put on coal. When the forward train had gone, Hughes started his train up to get to the coal pile. The train broke in two, and eleven cars ran back; upon them was the other brakeman named Losty, who tried in vain to stop them; they collided with plaintiff's train and he was injured.

Further facts appear in the opinion.

*Geo. W. Miller*, for appellant. The negligence of starting the train with an insufficient number of brakemen could not be attributed to defendant. (*Sammon* v. *N. Y. and H. R.*, 62 N. Y., 251; *Rose* v. *N. Y. and H. R.*, 58 id., 217; *Malone* v. *Hathaway*, 64 id., 5; *Cochrane* v. *N. Y. C. and H. R.*, 60 id., 133.)

*Matthew Hale*, for respondent. Defendant was liable because of its negligence in not supplying the train with a sufficient number of brakemen. *Flike* v. *B. and A. R. R. Co.*, 53 N. Y., 551, 554.)

ANDREWS, J.   It is no answer to an action by a servant against the master, for an injury caused by the master's negligence, that the negligence occurred in the course and conduct of the business in which the servant was employed. For his own negligence the master is responsible to his servant equally as to any other person.   The servant on entering the employment of the master does not assume the risks of the master's negligence.   He assumes the risk of the negligence of a co-servant; but the reason of the rule, which exempts the master from liability to one servant for the negligence of another ceases, and has no application when the master's own negligence caused the injury.

The rule that the master is not liable for the negligence of a co-servant does not, however, go to the extent of exempting him from liability in every case, when it appears that he did not himself do or direct the doing of the negligent act; or even when the immediate negligence is that of a person who in some sense was the co-servant of the person injured. There are certain duties which concern the safety of the servant which belong to the master to perform, and he cannot rid himself of responsibility to his servant for not performing them, by showing that he delegated the performance to another servant, who neglected to follow his instructions, or omitted to do the duty intrusted to him.

The duty of the master to select competent servants and to provide safe implements and machinery for the use of his servants belongs to this class.   The rule that the servant takes the risks of the service "supposes," says Lord CRANWORTH, "that the master has secured proper servants and proper machinery for the conduct of the work." (*Bartonshill Coal Company* v. *Reid*, 3 Macq., 275.)   From the nature and extent of the particular business, or the fact that the principal is a corporation and can only act through agents, it may be necessary for the master to commit the selection of servants, and the purchase and providing of machinery to servants and agents; but the duty to use reasonable care in performing these acts always remains the duty of the master,

and negligence in performing it is his negligence, whether he acted himself or by others. If the immediate negligence in these cases is that of an agent or servant, and a co-servant is injured thereby, the law imputes the negligence to the master and the master is liable the same as if the injury had been sustained by a stranger. The case of *Flike, Admin'r*, v. *The Boston and Albany R. R. Co.* (53 N. Y., 550), was decided upon an application of the principle that the master is liable to the servant for an injury caused by his own negligence. The difficulty in that case was in determining whether the act of sending out the first train with an insufficient number of brakemen was the act of the defendant. If it was, then upon the facts found by the jury, the verdict was right. There was wrong, injury and damage which sustained the action. The duty of dispatching trains and manning them was confided, as the evidence then appeared, to Rockefeller, and it was made his duty to see that they were supplied with a sufficient number of brakemen. The negligence shown did not consist in any omission by the company to provide, by proper rules and regulations for the proper equipment of the train ; but in the failure of Rockefeller to do his duty, and the negligent oversleeping of Loftus, who was designated by Rockefeller to go upon it. The court therefore were called upon to decide whether the negligence of Rockefeller and Loftus was the negligence of co-servants, so as to bring the case within the general rule absolving the master from responsibility to one servant for the negligence of another ; or whether the case was within the exception to the rule, and whether the duty to see that a sufficient number of brakemen were upon the train when it started upon its trip, was not like the duty to furnish competent servants and proper machinery, a duty at all times resting upon the company, which it was bound to discharge for the protection of all persons, its servants as well as others, and which if neglected, and injury to a servant resulted from the neglect, gave a right of action notwithstanding the fact that the immediate negligence was that of co-servants intrusted with its perform-

ance. The court distinctly held that negligence in starting the train without sufficient brakemen was the negligence of the company. The chief justice, in pronouncing the opinion of the majority of the court, said : "The true rule, I apprehend, is to hold the corporation liable for negligence or want of proper care in respect to such acts and duties as it is required to perform and discharge, as master and principal, without regard to the rank or title of the agent intrusted with the performance ; " and again : " It was negligent for the company to start the train without sufficient help."

The present case arose out of the same accident as the *Flike Case*, and the principle there decided must be applied in its determination. The decision in the *Flike Case* was followed on the trial of this case. The judge submitted to the jury to find upon the evidence whether two brakemen were sufficient on the first train, and whether three brakemen were necessary for its proper management ; and if they should find that three brakemen were necessary, he submitted to them the further question, whether the absence of the third brakeman caused the injury, and charged them that if both facts were found for the plaintiff (no contributory negligence being claimed) he was entitled to recover. There was no error in the general view taken by the court in disposing of the case, and it remains to consider whether there are any valid exceptions to the charge, or to refusals to charge, as to these exceptions only our attention is called.

The court was requested to charge that if three brakemen had been provided to go with Hughes' train, and that to start with two was negligence, still if the jury believed from the evidence that the conductor was instructed to report the failure of any brakeman to appear to Rockefeller, before starting, and he did not do so, but started the train with but two brakemen, this act was the negligence of the conductor, and the plaintiff cannot recover. The court properly refused this instruction, for the reason already stated, viz., that no matter whose immediate negligence it was to start the train without sufficient brakemen, it was in law the negligence of

the defendant for which it is responsible to persons sustaining injury therefrom, whether servants or third persons.

The request to charge that if the jury believed that if there had been three brakemen on the train when it started, all but the rear brakeman would have left the train when it stopped at Chatham, or that the third brakeman would not have been on the eleven detached cars, the plaintiff cannot recover, was properly refused. The defendant's counsel, before the court ruled upon the request, stated in substance, that the proposition was, that if the jury believed the third brakeman would not have been at his post, the plaintiff could not recover. The court in denying the request properly stated that it could not be assumed that if a third brakeman had been sent he would not have performed his duty.

The court was requested to charge that if the jury believed it was negligence in Hughes to start up his train after stopping at Chatham, to reach the coaling place, without knowing that there were two brakemen on the train, or on the eleven rear cars, and that that was the cause of the accident, the plaintiff could not recover. The court said: " I so charge, that is, if the jury believe that this was the sole cause of the accident," and added, " but it must be taken with this allowance, that he (Hughes) had but two brakemen, and if it was the duty of one to be at the coal heap, and one at the train, the question still remains whether, if there had been a third brakeman, the accident could not have been avoided." The defendant's counsel excepted to the modification. The modification was not ground of exception. The plain meaning of the court was, that if Hughes' negligence was contributory with that of the defendant in not sending three brakemen with the train, and both together caused the accident, the negligence of Hughes did not relieve the company from liability. This was unobjectionable.

The plaintiff put in evidence a time-table of the defendant, on the back of which were certain printed rules. The thirteenth rule declared " that every engineer is author-

ized to require the conductor and brakemen of his train to be at their posts." The defendant's counsel requested the court to charge that if Hughes failed to do his duty in this respect, or was negligent, and that negligence caused the injury to the plaintiff, there could be no recovery. The court in reply said : " I decline to charge in the form asked, because, as I understand, the Court of Appeals have held that it was the duty of the defendant to see that the train went out with a sufficient number of brakemen." If the court intended to charge that the negligence of the company in sending the train out without sufficient brakemen entitled the plaintiff to recover, although the accident would not have happened if Hughes, at Chatham, had performed his duty and kept the brakemen sent at their posts, the charge was clearly wrong. But the court did not intend to charge this. The judge had already distinctly charged that if the omission to send the third brakeman did not cause the injury, the plaintiff could not recover ; also that if it was caused by the negligence of Hughes or Losty, at Chatham, the defendant was not liable. It is clear from the reply of the court to the request to charge, that the court understood it as referring to the negligence of Hughes in starting the train at Albany, without seeing that the brakemen assigned to it, or a sufficient number, were aboard. In this view the refusal was correct. It was the duty of the defendant's counsel, if the court did not apprehend his meaning, to have called its attention to the fact. His acquiescence in the interpretation put by the court upon the request concludes the defendant.

There are many other exceptions to the charge and to refusals to charge, but we think it unnecessary to notice them in detail. We have considered them, and are of the opinion that none of them are well taken.

All concur, except RAPALLO, J., not voting, and ALLEN, J., absent.

Judgment affirmed.