ALICE McCOSKER, ADMINISTRATRIX, ETC., RESPONDENT, v. THE LONG ISLAND RAILROAD COMPANY, APPELLANT.

*Liability of a railroad company to a servant for an injury caused by the negligence of a fellow-servant—when a servant is the alter ego of the company so as to render it liable for his negligence.*

This action was brought to recover damages for the negligent killing of the plaintiff's intestate by the defendant. The deceased was at the time of his death a driller in the employ of the defendant, having been hired by and being under the immediate supervision and control of one Luke, whose duties included the hiring and discharging of the drillers, the making up of trains and the distribution of cars in and about the yard and repair shops of the defendant. The immediate superior of Luke was the train dispatcher, who was himself under the control of the defendant's general superintendent.

Luke having received directions to send to the repair shop a car, one of the bumpers of which was so broken that it could not be coupled to another car by the ordinary method, ordered the deceased and another driller to go to the car, which was standing on a track in the yard, and fasten it with a chain to the nearest of four cars, which were standing on the same track detached from and to the east of it. While they were so engaged Luke signaled to an engineer to back a train of ten cars, standing east of the four cars; the engineer, without any signal or warning, backed the train against the four cars, pushing them against the deceased, and thereby occasioning the injuries from which he died.

*Held*, that Luke stood in the place of the company; and that, as the deceased was killed by his negligent act, the defendant was liable to the plaintiff therefor.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a

new trial, made upon the minutes of the justice before whom the action was tried.

The action was brought to recover damages for the death of plaintiff's intestate, which was alleged to have been caused by the defendant's negligence. Upon the trial no witnesses were sworn the facts being admitted by both parties. The following are the facts, as so admitted and agreed upon.

*First.*—That John McCosker, plaintiff's intestate, was, at the time of his death, in the employ of the defendant as a driller in and about the defendant's yard at Hunter's Point. That the duties of the said McCosker, as such driller, were to assist in the making up of trains and the distribution of cars in and about the said yard and repair shops of the defendant.

*Second.*—That the said McCosker had been hired by, and was under the immediate supervision and control of Rodney W. Luke, the yardmaster.

*Third.*—That the duties of the said Luke included the hiring and discharging of drillers, the making up of trains, and the distribution of cars in and about the said yard and repair shops of the defendant, and that the said McCosker and others were employed by the defendant to assist the said Luke in the said duties. That the immediate superior of the said Luke in the service of the defendant was the train dispatcher, whose orders and instructions the said Luke was at all times bound to obey, and who was under the control of the general superintendent of the defendant.

*Fourth.*—That on, or immediately prior to May 25, 1877, a certain caboose car was brought into the yard from some point on defendant's railroad, having the bumper upon its easterly end so broken that it could not be coupled to another car by the ordinary method. That the said Luke, having on the day aforesaid received instructions from the defendant's repair shop to send the said car to the said shop (which was situate in the defendant's yard at Hunter's Point), for repairs to the said bumper, instructed the said McCosker and another driller to assist him, the said Luke, therein. That the said car was then standing at or near the westerly end of one of the tracks in the said yard. Within a few feet to the easterly, and upon the same track, stood four cars coupled together, but detached from the car

with the broken bumper (these were flat cars about four feet high above the rail), and still further to the easterly upon the same track stood a train of ten flat cars, each of the height aforesaid, and having an engine attached thereto at the easterly end, facing easterly. That the said Luke instructed the said McCosker and another driller to take a chain and attach the same to the said broken bumper, and also the car standing next easterly thereof, in order that the said broken car might be hauled to the repair shop. That while the said McCosker and the other driller were so engaged, the said Luke, who was standing near the engine, signaled the engineer to back his train. That the said engineer thereupon, without signal or warning, backed the said engine and train in a westerly direction in such manner that the rear car of the said train struck against the four detached cars, and forced the car next easterly of the car with the broken bumper backward upon and against the said McCosker, so that he was crushed between the said two cars last mentioned, and sustained injuries from which he subsequently died on June 5, 1877. That the said injuries were sustained at about half-past 11 o'clock in the morning of May 25, 1877. ·

*Fifth.*—That the said Luke knew of the broken bumper before he gave the order to the deceased. That the said defect was patent and noticeable to any one familiar with railroad cars.

*Sixth.*—That at the time of his death, the deceased was of the age of twenty-eight years, and received from the defendant a salary of $40 per month.

*Seventh.*—That the deceased had been in the employ of the defendant as a driller for many years, and had always been found a sober and careful man.

*Eighth.*—That the plaintiff is his widow and administratrix, and that she and an infant child are his only next of kin, and were wholly dependent on the deceased for their maintenance and support.

The stipulation and statement of facts having been read, the defendant's counsel moved for a nonsuit, which was denied, and the defendant excepted.

The jury rendered a verdict for the plaintiff for $5,000.

*Edward C. Sprague*, for the appellant. The duties of the master to his servant are the following: 1. To use due diligence in providing proper and sufficient tools, machinery and apparatus for the use of servants. 2. To use due diligence in employing fellow-servants competent and sufficient in number, and in discharging such as he knows or ought to know to be incompetent. (*Wright* v. *N. Y. C.*, 25 N. Y., 562, 565; *De Forest* v. *Jewett*, 19 Hun, 509.) All the cases in this State fall into one or the other of the classes above enumerated. The following are cases where the injury was caused by defective appliances. (*Keegan* v. *Western R. R.*, 8 N. Y., 175; *Ryan* v. *Fowler*, 24 Id., 410; *Corcoran* v. *Holbrook*, 59 Id., 517; *Plank* v. *N. Y. C.*, 60 Id., 607; *Mehan* v. *S. B. & N. Y.*, 73 Id., 585; *Gage* v. *D. L. & W.*, 14 Hun, 446; *Hawley* v. *Northern Central*, 17 Id., 115; *Cone* v. *D. L. & W.*, 15 Id., 172; *Eagan* v. *Tucker*, 18 Id., 347; *Connolly* v. *Poillon*, 41 Barb., 366; *Spelman* v. *Fisher Iron Co.*, 56 Id., 151; *Kirkpatrick* v. *N. Y. C.*, 9 N. Y. Weekly Dig., No. 15, p. 381; *Fuller* v. *Jewett*, 9 N. Y. Weekly Dig., No. 19, p. 443.) The following are cases where the injury was caused by an incompetent fellow-servant, or by an insufficient number of fellow-servants. (*Laning* v. *N. Y. C.*, 49 N. Y., 521; *Brickner* v. *N. Y. C.*, 2 Lans., 506; *Flike* v. *B. & A.*, 53 N. Y., 549; *Sprong* v. *B. & A.*, 58 Id., 56; *Booth* v. *B. & A.*, 73 Id., 38; *Harvey* v. *N. Y. C.*, 19 Hun, 556.) There is a class of cases which identify a fellow-servant with the master as his *alter ego* or vice-principal. They are cases where the negligence was indeed in fact the negligence of the fellow-servant, but was, in law, the negligence of the master, because it was a failure to perform *the master's duty*. (*Corcoran* v. *Holbrook*, 59 N. Y., 517; *Eagan* v. *Tucker*, 18 Hun, 347.) The fact that Luke held a position of some authority in defendant's service, and that deceased was his subordinate, does not affect the relations of the two as fellow-servants. (*Sherman* v. *Roch. & Syracuse*, 17 N. Y., 153; *Barringer* v. *D. & H.*, 19 Hun, 216; *Besel* v. *N. Y. C.*, 70 N. Y., 171; *Wright* v. *N. Y. C.*, 25 Id., 562; *Howells* v. *Steel Co.*, L. R., 10 Q. B., 62; *Searle* v. *Lindsay*, 11 C. B., N. S., 429.) The delegation to Luke of the master's duty in hiring and discharging

drillers, made Luke only the master *pro tanto*, and did not alter the relations of Luke and McCosker as fellow-servants in any other respect. (*Flike* v. *B. & A.*, 53 N. Y., 553; *Laning* v. *N. Y. C.*, 49 Id., 521; *Brickner* v. *N. Y. C.*, 2 Lans., 506; *Barringer* v. *D. & H.*, 19 Hun, 216; *Feltham* v. *England*, L. R., 2 Q. B., 33; *Wilson* v. *Merry*, L. R., 1 Scotch App., 326; *Searle* v. *Lindsay*, 11 C. B., N. S., 429; 19 Hun, 219.)

*Clifford A. H. Bartlett*, for the respondent. The yardmaster hired the deceased, and had general supervision and control over the drillers at the Hunter's Point yard. He was not a fellow-servant, but represented the company, and notice to him was notice to the defendant. (Shearman & Redfield on Negligence, § 103; *Besel* v. *N. Y. C. & H. R. R. Co.*, 70 N. Y., 171; *Flike* v. *Boston & Albany R. R.*, 53 N. Y., 553; *Laning* v. *N. Y. Cen.*, 49 N. Y. 533; *Brickner* v. *N. Y. C. R. R.*, 2 Lans. 515, aff., 49 N. Y., 672; *Eagan* v. *Tucker*, 18 Hun, 348, 349; *Fort* v. *Whipple*, 11 Hun, 586; *Malone* v. *Hathaway*, 64 N. Y., 9; *Bradley* v. *B. R.*, 62 N. Y., 99; *Booth* v. *B. & A. R. R.*, 73 N. Y., 40; *Dobbin* v. *Richmond & Danville R. R. Co.*, 81 N. C., 547; *Devany* v. *Vulcan Iron Works*, St. Louis Court of Appeals [1877], 4 Mo. Appeals, 236; *Whalen* v. *Centenary Church*, 62 Mo., 326; *Gormly* v. *Vulcan Iron Works*, 61 Mo., 492; *Mullen* v. *Philadelphia & Southern Mail Steamship Co.*, 78 Penn., 26, 1875; *Railway Co.* v. *Lews*, 33 Ohio, 200; *Railroad Co.* v. *Keary*, 3 Warren & Smith, Ohio, 226; *Railway Company* v. *Fort*, 17 Wall., 559; *Ford* v. *Fitchburg R. R.*, 110 Mass., 260, 1872; *Chicago & N. W. R. R.* v. *Bayfield*, 1877, 37 Mich., 213; *Berea Stove Co.* v. *Craft*, 31 Ohio, 292; *Brabbits* v. *Chicago & N. West. R.*, 38 Wis. 289; *Harvey* v. *N. Y. C. & H. R. R.*, 19 Hun, 559; *Hough* v. *Texas & Pacific R. R. Co.*, 12 Chicago Leg. News, No. 20, p. 167.)

The relation of master and servant admits the right of one person to control the actions of another, which right implies the power to discharge. The power to discharge, therefore, is the true test to determine whether the relation of master and servant exists. (*Michael* v. *Stanton*, 3 Hun, 464; *Pawlet* v. *Rutland & Washing-*

*ton R. R.*, 28 Vt., 300; *Quarman* v. *Burnett*, 6 Mees. & W., 509; *Hilliard* v. *Richardson*, 69 Mass., 366; *Morgan* v. *Bowman*, 22 Mo., 550.)

BARRETT, J.:

The difficulty in this class of cases is in applying well settled rules to ever-varying facts. That a master is not liable to his servant for the negligence of a fellow-servant is a general proposition which now admits of no question. Nor is it qualified by the circumstance, that the sufferer happens to be inferior in grade to, and subject to the orders of, such negligent fellow-servant.

For his own personal negligence, however, the master is as much liable to his servant as he is to a stranger. And he may be guilty of such personal negligence either *in propria personæ*, or by the act of an agent to whom he has exclusively confided his business. In the latter case, the agent is treated as the master's *alter ego*. It is not infrequently a perplexing question whether the person is in reality such *alter ego* or the injured employee's fellow-servant of a superior grade. Upon the solution of that question, the decision of the present appeal depends. It is to be observed that the cases draw a distinction between individuals and corporations. The former may, in person, superintend their own work, while the latter, necessarily, act by and through agents. Nor is such corporate agency confined to the *status* of a general superintendent. The corporation may have many departments of business or branches of service, requiring in each a competent executive head. So, a particular department, furnished with a general head, may be made up of various minor departments, which are the subject of separate and distinct agencies. Each of the minor agents may be the company's representative and *alter ego pro hac vice*. Such heads of minor departments must not be confused with foremen, head brakemen or other upper servants. The test is largely in the power to employ and discharge subalterns, also in the independence with which the function is exercised. Even the latter need not be absolute. There may, indeed, be general instructions from a higher agent, yet the subordinate agent may be supreme in the matter of execution.

In the case at bar, the injury was caused by the negligence of the yard-master Luke. This negligence was direct and personal. With knowledge of the broken bumper, he gave the signal which, in the backing of the engine and train that followed, caused the accident. The plaintiff's intestate was a driller, employed by the defendant. He had been hired by Luke, and was under the latter's immediate supervision and control. Luke's duties included the hiring and discharging of drillers as well as the making up of the trains, and the distribution of cars in and about the defendant's yard and repair shops. We are of opinion that these facts bring the case within the *alter ego* principle. Luke was not, in any just sense, McCosker's fellow-servant even of a higher grade; there may have been a foreman or head driller coming within this category. But that was not Luke's position. He was the responsible head of that subdivision of the service. The making up of trains and the distribution of cars were evidently important details, requiring method, arrangement and foresight. For these, the company looked to Luke. To insure prompt and unquestioning obedience, the power of appointment and removal, so characteristic of the master, were conferred upon him. It is true that he had a superior in the train dispatcher, who in turn was controlled by the general superintendent. But the duties of each were marked and independent. Even the superintendent was naturally under the general direction of the president, while the latter was subject to the board of directors. Yet each represented the company in his appropriate sphere. So in a minor degree did the yardmaster. He of course took his orders from the train despatcher, as to the number, character, time and extent of the trains to be made up. But he executed those orders in his own way, according to methods of his own devising, and through servants of his own choosing. That under these circumstances, he stood in the place of the company *pro hac vice* seems to us to be reasonably clear. The cases support this view. (*Brickner* v. *New York Central R. Co.*, 2 Lans., 515; affirmed, 49 N. Y., 672; *Laning* v. *The Same*, Id., 521; *Flike* v. *B. & A. R. Co.*, 53 Id., 549; *Malone* v. *Hathaway*, 64 Id., 5; *Besel* v. *N. Y. C. R. Co.*, 70 Id., 171; *Booth* v. *B. & A. R. Co.*,

73 Id., 40; *Fort* v. *Whipple,* 11 Hun, 586; *Eagan* v. *Tucker,* 18 Id., 348. And see *Mullan* v. *Phil. & S. M. S. Co.,* 78 Penn., 26; *Railway Co.* v. *Laws,* 33 Ohio, 200; *Railroad Co.* v. *Keary,* 3 Warren & Smith [Ohio], 209, *et seq. ; Dobbin* v. *Richmond & Danville R. R. Co.,* 81 N. C., 547.)

In *Laning's case* the company was held for the improper reten-tion by an agent, whose duty it was to employ subordinates, of an intemperate foreman, through whose bad habits the plaintiff received the injury complained of. If the company was liable for this agent's negligence in permitting the work to be done by incompe-tent men it would certainly have been liable if he had directed it himself, and in giving such directions had been guilty of personal negligence.

*Flike's case* seems to be almost directly in point. It was there decided that a "head conductor," whose business it was to hire and station brakemen, and make up, prepare and dispatch the morning trains, represented the corporation ; and that his acts should be regarded as those of the company, and not of a co-servant. The company was there held, because the head conductor started the train with an insufficient number of brakemen. It would have been equally liable, if the accident had been caused by his negligent direction to the brakemen.

The correctness of these views was not doubted in *Besel* v. *N. Y. C. R. Co.* (*supra*). In the latter case, the yardmaster was not guilty of negligence, nor did he occupy the place of the corporation in the distribution and removal of cars. (Op. Miller, J., 175.) There, too, the powers and duties of the yardmaster, were not nearly as extensive as in the present instance. Miller, J., observes that he had no control in starting or in the distribution of the cars ; . . . "he employed the men who distributed the cars, but not the car repairers." The accident was caused by the absence of a sufficient number of brakemen on the top of the cars, but the yard-master "had no especial duty or power in this respect." *Booth* v. *B. & A. R. Co.,* re-affirms the rule laid down in *Flike's case. Barringer* v. *Delaware & Hudson Canal Co.* (19 Hun, 216), is relied on by the appellant. That was a case of a foreman, a servant merely of a higher grade ; he was employed by, and reported directly

to, the trackmaster. He was not independent within his sphere, but was under the orders of the trackmaster, not only *as to what he should do, but as to how he should do it.* The trackmaster superintended the track, *employed this foreman,* and other proper men, and furnished the necessary tools and machinery. The foreman had no independent responsibility, except the care of the tools and machinery which he used. Even for these he applied to the trackmaster, and when they gave out or became defective, *he was ordered* to take them to the shop and have them repaired. The case is not at all parallel with the present. The position of the trackmaster there was more like that of the yardmaster here.

The attempt to impress upon Luke's acts a dual character,—namely, that of the company's representative up to a certain point, and that of fellow-servant beyond,—is fully answered by the criticism of CHURCH, Ch. J., upon a similar contention in the *Flike case.* "The acts of Rockefeller cannot be divided up, and a part of them regarded as those of the company and the other part as those of a co-servant merely, for the obvious reason that all his acts constituted but a single duty. His acts are indivisible, and the attempt to create a distinction in their character would involve a refinement in favor of corporate immunity not warranted by reason or authority." It may further be observed that Luke was not working with the drillers when the accident occurred. He gave the signal, which caused the accident, in his capacity as chief of his special department. In doing so, to quote again from the opinion in Flike's case, he occupied "the place of the corporation, and *the latter should be deemed present,*" and consequently liable for the manner in which the act was performed. Luke's act in giving the signal was in fact the act of the corporation.

There being no other point in the case of any importance, the judgment should be affirmed, with costs.

BRADY and DANIELS, JJ., concurred.

**Judgment affirmed.**