Smith, P. J.
Action to recover damages for a personal injury to the plaintiff, alleged to have been caused by the negligence of the defendant while the plaintiff was in its employ as a fireman on one of its trains, No. 23, upon the Auburn branch of its road. The accident occurred on the night of June 5, 1884, about 10:45 o’clock, a short distance east of the Shortsville station. The train on which the plaintiff was employed was a regular passenger train, running west, and was due at the Shortsville station at 10:4-7, schedule time. It left the Clifton station, next east, four minutes late, and had nearly made up its time as it approached Shortsville. When within a short distance of that station it collided with an engine of the defendant, running easterly, termed a “wild cat” engine, or one having no schedule time. The collision resulted in the injuries of which the plaintiff complains.
The “wildcat” was an engine, with tender attached, which was being taken from Canandaigua to Syracuse for .repairs, in charge of an engineer (Wilson) and a fireman. It had been used for several years as a yard engine at Canandaigua. On the day of the accident, it had become disabled for its accustomed work by the breaking of the pin which connected one of the driving rods to the back driving wheel, and that made it necessary to disconnect both driving rods, leaving the engine with only one pair of driving wheels connected with the cylinder, the disconnected pair acting merely as truck wheels. The testimony shows that in that condition the difficulty of stopping the engine quickly while in rapid motion was greatly increased by •reason of its loss of power to “grip the track.”
Wilson had been sent from Syracuse to Canandaigua with .another engine to supply the place of the disabled engine, *386 and for the purpose of taking the latter to Syracuse for repairs. On reaching Canandaigua, he got the disabled engine on the track ready to start, at about 10.25 p. M., and then informed Riley, the railroad telegraph operator at C. that he was ready and waiting for orders. Riley at once telegraphed to Rochester that “engine 221,” the disabled engine, “ was ready to go to De Witt,” and at 10.32 he received from defendant’s department at Rochester, through which all trains are moved over the Auburn branch, an order of which the following is acopv: “Roch. 6-5-’84— Eng. 221, Ca. Wildcat to West X, 12. G. H. B.” The letters “ G. H. B.” are the initials of George H. Burrows, the defendant’s superintendent. “ West X ” is a railroad junction east of Shortsville, and near Geneva. The figures “12” mean, “Do you understand?” The order was delivered to Wilson, who signed his name to it, and Riley immediately reported him out, and he left for the west at. 10.33. Shortsville is six miles east of Canandaigua. About midway between them is the Chapinville station. The track is single, with switches and side tracks at each station. At Shortsville are two switches west of the station, and one east of it at the east end of the side track. Wilson left. Canandaigua with the purpose of passing by Chapinville and meeting No. 23 at Shortsville. Accordingly he ran to Shortsville without stopping, going part of the way at the rate of twenty-four miles per hour. He testified that he passed the west switches, intending to run to the east switch and back onto the siding. From the west switch to the place of collision, there was a descending grade.
Near the west switch Wilson shut off steam, and 'as he approached the depot he looked at his watch and saw that the time was 10.45, and then he reversed his engine. Seeing, as he testified, that the engine did not slow up, and apparently had no power to take hold of the track, he gave her a little steam in the back motion, and applied the brakes and sand, but could not stop her, and soon the headlight of the approaching train appeared and the collision occurred, his engine being then in motion.
Wilson was thirty-one years of age at the time of the' accident, had been in the employment of the defendant several years, part of the time as a fireman, and at two different periods of about six months each had served as an extra engineer in charge of freight trains, but never as a regular engineer; had been over the Auburn road about twenty-four times in all, in his service as an engineer, the last time about a month before the accident; had never inspected the switches or side tracks at Shortsville or Chapinville so as to learn their exact location, and knew nothing on that subject except as he had noticed when he passed over them *387 and had been told by others, had no experience in running an engine disabled as this was, and had never observed the effect of such disability upon the holding power of an engine or the ability of those in charge of it to stop it; was examined when promoted to the position of engineer, but not upon that subject.
The court denied a motion for a non-suit, and in substance submitted it to the jury to say whether Wilson in passing the west switch and descending the grade at Shortsville with intent to take the east switch was negligent in the circumstances, and, if so, whether such negligence was the sole cause of the accident; and he further instructed them that if they should so find, the plaintiff was not entitled to recover, the defendant not being liable for an injury occasioned to the plaintiff by the negligence of his co employee. On the other hand, notwithstanding they should find Wilson negligent, if they should also find that he would have avoided the accident if he had been an engineer of such competence skill and experience as was required for the occasion, and had had an engine in such competent condition as to have responded to the demands which he then reasonably made upon it to prevent and escape the accident which followed, the plaintiff is entitled to recover.
We think the question- thus submitted were presented by the evidence, and that the instructions given in connection with them as to the law were proper.
In sending out the wild-cat engine the superintendent, or the officer acting in his name, and as is to be assumed, by his authority," was the alter ego of the defendant. The order left it to the discretion of Wilson to run his engine from Canandaigua to West X at such time and in such manner as he thought admissible and safe. As it permitted him to run on the time of a regular train, creating danger of a collision, it was the paramount duty of the defendant to take such precautionary measures as would prevent injury, not only to its passengers, but also to its employees, by reason of such an accident. It was said in Sheehan against this defendant (91 N. Y., 332), that “when life is at stake it” (the law) “demands that care shall be taken to provide as far as possible against all contingencies” (p. 339); and the rule is impliedly stated generally to be that it is the duty of the master not to expose his servants to perils against which they ought to have been guarded by proper diligence on his part; or, more briefly, the master must take such reasonable care to protect the servant from accident as the exigencies of the situation require (p. 338).
In this case it was for the jury to say whether anything was omitted which might reasonably have been done by the *388 company to prevent the collision. The order from the superintendent’s office might have directed Wilson not to leave Canandaigua till No. 23 arrived, or the company might have instructed him to wait at Chapinville for that purpose and might have arranged the side- track there for him to get upon it; or might have done the like in respect to the west switch at Shortsville; or might have notified the engineer of the express train of the sending out of the “wild-cat,” so that he could have been on his guard; or might have notified Wilson of the danger resulting from the loss of power of his engine; or might have selected an engineer to run the “wild-cat ” who had had experience with an engine so disabled; but it does not appear that any of these things were done, nor that either of them could not have been done if the company had used reasonable care and diligence.
In view of these considerations, we think it was proper to leave it to the jury to say whether the injury was attributable to negligence on the part of the master, and in determining that question they might well inquire why none of these things were done.
The court charged that if the injury could be attributed to the negligence of the defendant, however slight, the defendant is liable, notwithstanding Wilson may have been negligent. That the master its hable for his negligence, notwithstanding that of a co-employee may concur, its well settled Booth v. Boston, etc., R. R. Co., 73 N. Y., 38, Dana v N. Y. C., etc., Co., 92 id., 639; Ellis v. L. E. etc., Co., 95 id., 546. That the negligence of the master is slight, does not take the case out of the rule, provided such negligence contributed to produce the injury.
The defendants’ counsel asked the court to charge that there was nothing in the condition of the wild cat engine that rendered it negligent on the part of the defendant to send it out under the order proved, if defendant was not negligent in employing Wilson to run it. The request was declined and the court left the question to the jury. In doing so, the judge said that he regarded the question as a competent one. That Wilson, as he stood, a competent man to run that engine, just as she stood on the night in question. The request, we think, was properly disposed of. The testimony presented the question whether the engine was in such a condition, as that in view of all the circumstances, the sending it out, as was done, was negli gent, even assuming that Wilson was competent. Independently of the suggestions already made as to the precautions which the defendant might have taken, it may be remarked, that there was testimony tending to show that other engines disabled as this was, had been sent by the defendant for repairs by being attached to a train, instead of *389 being run alone, and that testimony was proper for the consideration of the jury.
We have examined the other exceptions and think they are met by the views above expressed.
The order should be affirmed.
Haight and Bradley, JJ., concur.