(McKinley Fel. Serv. § 30; *Bryant* v. *Burlington, etc. R. R. Co.* 66 Iowa, 305; 55 Am. Rep. 275; *Howland* v. *Milwaukee, etc. Ry. Co.* 54 Wis. 226; *Brick* v. *Rochester, N. Y. & P. R. R. Co.* 98 N. Y. 211.)   But in the case of a servant or train-hand engaged in the operation of the road, or riding on the road in the ordinary course of business, it is implied as a part of the contract of employment that the master shall observe all the care which the exigencies of the situation reasonably require, in furnishing and maintaining a track and road-bed adequately safe for use.

By the instruction, as given in this case, the jury was told, in effect, that although the deceased knew that the track of defendant was obstructed by slides and damaged by storms, and was not in a safe and proper condition for use, and with knowledge of that fact went out upon a train, with the express purpose of repairing such damages and removing the slides, or assisting others to do so; yet, nevertheless, the defendant was bound to furnish him exactly the same reasonably safe track and road-bed which the law would have required it to furnish had he been engaged in the operation of a train thereon in the ordinary course of business, or had he, in the course of his work, been riding over a road presumedly in good condition.   This was not the correct measure of the defendant's duty toward the deceased under the facts of this case.

"While the rule is generally applicable," says McKinley, "that when it is the duty of the employé of a railroad corporation, in the course of his work, to ride over the road of the corporation, it is its duty to provide a track suitable and sufficient for the purpose, and to maintain it in good order, it must be considered with some qualification when the road has become dilapidated and out of repair, and is in the process of reconstruction, in which work the employé is engaged."   (McKinley Fel. Serv. 82.)

In this case, the track of defendant's road was placed in the hands of deceased with other employés to be repaired and put in a condition so it could be used, and not for

actual use, as in *Meloy* v. *R. R. Co.* 77 Iowa, 743; 14 Am. St. Rep. 325; *Bowen* v. *R. R. Co.* 95 Mo. 268; *Rosenbaum* v. *R. R. Co.* 38 Minn. 173; 8 Am. St. Rep. 653, and *Madden* v. *R. R. Co.* 32 Minn. 303, and this is the distinguishing feature between the case at bar and the cases cited.

In the case of *Madden* v. *R. R. Co.*, *supra*, it is said that the duty of the master in respect to the instruments and means furnished his servant to perform his service is the same, whatever the nature of the service may be, whether it be to repair or to do any other thing; and that there is no difference as to the duty of the master and the assumption of risk by the servant between an employment to make repairs and any other employment. As far as we have been able to discover, there is no other case in the books holding a similar doctrine, where the employé was injured while on a construction or repairing train, and himself engaged in the work of repair; and the learned editor of the American and English Railroad cases, in a note to this case, in vol. 18, p. 67, of that work, expresses considerable doubt as to the soundness of this decision.

The fact that the particular bridge at which the accident occurred was not known to be out of repair, or that deceased was not employed to assist in repairing this bridge, cannot change the rule or take this case out of the exception to the rule requiring the master to furnish a reasonably safe track and road-bed for its employés. It was known that the track of defendant's road from the Cascade Locks west for several miles was obstructed by land-slides and wash-outs, caused by the unusual, if not extraordinary storms then prevailing, and deceased was employed to go out upon the road and assist in putting it in condition for use, making such repairs as might be necessary, and wherever needed. The particular labor in which he was engaged at the time of the casualty involved the use of the very track which he was employed to assist in repairing. The train upon which he was riding was, with the workmen aboard, patrolling the road, under the direction of the road-master, for the pur-

pose of opening and repairing the same, and was the means of transportation from one place to another, as the necessities of the work might require.  He, therefore, took upon himself the risks necessarily incident to the employment from the damaged condition of the track, unless, perhaps, they were latent and known to the master, but not known to nor by the use of proper diligence discoverable by him; but he did not take on himself risks, if any, which arose by reason of the negligence of the master, unless they were known to him, or by the use of proper diligence were discoverable by him.  So far as the danger of making the repairs was increased by the damaged condition of the track, from natural causes, he assumed the risks of such enhanced danger; but if it were increased by the neglect of the master to use proper care, before the storm, to keep the bridge in repair, or to ascertain the condition of the track or bridge after the storm, or to take such due and proper precautionary measures to prevent accidents to its employés, as the exigencies of the situation might require, he did not assume such risks.

The fact that the track was known to be in a dilapidated condition, and out of repair, did not relieve the master from the discharge of his duty in the premises.  The deceased could still exact from it the exercise of such care and vigilance and require it to take such precautionary measures to prevent accidents as the exigencies of the case, having due regard to the safety of its employés, would suggest to prudent and cautious men, experienced in that particular branch of railroad business.  If such care and vigilance were used by the defendant, it discharged its entire duty to the deceased, and if, notwithstanding this, an accident occurred by which he was killed, it is not liable.  It was not an insurer of his safety, nor responsible for the consequences of unavoidable accident.  Before it can be held liable, it must appear that the deceased was killed on account of some negligence on its part.  The question should have been put to the jury, guided by

proper instructions from the court applicable to the facts of this particular case, whether the defendant did in fact exercise such care and vigilance, or take such precautionary measures; but the instruction as given, furnished no intelligent guide for the jury in this case, even if correct as an abstract proposition of law, and was therefore erroneous.

It is also claimed that the court below erred in its instructions to the jury as to the measure of damages, and in refusing certain instructions on that subject requested by defendant. The court instructed the jury that the measure of damages was the pecuniary loss to the estate, to be arrived at by the jury from the evidence in the case, using their best judgment and discretion as to the amount of said loss, and nothing was to be allowed for the pain and suffering of the deceased or anguish of surviving relatives, nor for funeral expenses, but the amount was to be compensatory only, and that sum, which, taking into view the age of the deceased, the probability of the extent of his life, his earnings, personal habits, disposition, and capacity to labor, and make and save money, would represent his net savings; and in estimating the probable earnings of the deceased, had he not been killed, opportunities for the acquisition of money depending upon a change of condition, were not to be considered.

Without deciding or examining the question as to whether or not funeral expenses are a proper item of damages in an action for the wrongful death of a person under our statute, we think the instructions as given by the court in every other respect furnish the correct rule for the measure of damages in actions of this character, and on the whole are as favorable to the defendant as it could reasonably ask or expect. (2 Thomp. Neg. 1289, § 90; *Mansfield Coal Co.* v. *McEnery*, 91 Pa. St. 185; 36 Am. Rep. 662.)

Mr. Justice DEADY, in *Holmes* v. *O. & C. R. R. Co.* 6 Saw. 294, after stating that, under statutes similar to ours, it has been generally held that the rule upon which damages should be assessed in this class of cases, is, as for a pecu-

niary injury, and not a *solatium* or solace for wounded feelings or mental suffering, says: "The age, health, habits of industry and sobriety, and mental and physical skill of the deceased, so far as they affect his capacity for rendering useful services to others, or acquiring property, must also be considered.   Under the statute, the life of the deceased is valued according to his capacity and disposition to be useful,—to labor and to save.   The industrious, provident, and skilled are worth more to society than the indolent, improvident, and ignorant, and their death is to be compensated for accordingly." (*Ladd* v. *Foster*, 12 Saw. 547; S. C. 31 Fed. Rep. 827; *Holland* v. *Brown*, 13 Saw. 284; S. C. 35 Fed. Rep. 43.)

There is an inherent difficulty in placing a pecuniary alue upon human life; and in an action for the wrongful death of a person, the amount of damages recoverable must depend very much on the good sense and sound judgment of the jury, upon all the facts and circumstances of each particular case.   The jury may make the estimate of damages themselves, from the facts proved, yet their estimate must be based upon the facts in evidence, and they should be properly instructed as to the law applicable to the facts before them.   At best, there is such a degree of speculation and uncertainty as to the amount of damages in cases of this character that it is highly important that a clear and definite rule as to the measure of such damages be established by which the jury may be guided in their deliberations.

After a careful and attentive examination and review of the authorities, we are of the opinion that the proper measure of damages under our statute is the pecuniary loss suffered by the estate without any *solatium* for the grief and anguish of surviving relatives, or pain and suffering of the deceased, and that loss is what the deceased would have probably earned by his intellectual or bodily labor in his business or profession during the residue of his life, and which, as representing his net savings, would have gone

for the benefit of his estate, taking into consideration his age, ability, and disposition to labor, and his habits of living and expenditure. This is substantially the law as given by the court in this case.

The defendant requested the court to instruct the jury, that the measure of damages is the present value of that sum which, at eight per cent per annum, would yield annually a sum. equivalent to the annual savings of the deceased during his probable length of life; and as a guide in determining such an amount, that twelve hundred dollars would purchase an annual income of one hundred dollars for a period of forty-two years, and of course a less sum would purchase such an annuity for a period of thirty-six years. The argument in support of this position is that the estate is only entitled to recover such a sum as would yield an annual income equivalent to the savings of the deceased for a period of thirty-six years (his probable length of life), and which would exhaust itself at the end of that time. This contention overlooks the terms of the statute under which this action is brought, which provides that "the amount recovered, if any, shall be administered as other personal property of the deceased." (Hill's Code, § 371.) By this section the damages recoverable, which are not to exceed five thousand dollars, become personal assets of the estate, and are to be administered as other personal property. They are to be applied by the personal representative to the payment of the expenses of administration and debts, or distributed as the condition of the estate may require and the law provide, and are not recovered for the exclusive benefit of certain named beneficiaries, as is provided in the laws of those states modeled upon the statute of 9 and 10 Vict. c. 93, commonly known as Lord Campbell's Act.

The administrator or executor sues in his representative capacity to recover the loss, if any, sustained by the estate, and not as trustee for certain named parties, as in Lord Campbell's Act and similar statutes. In the latter case, the

right of action is not given to the personal representative for the benefit of the estate, but for the benefit of certain persons named therein, and the personal representative is a mere nominal party, who sues for their benefit. (*Blake* v. *R. R. Co.* 18 Q. B. 93; S. C. 21 L. J. (Q. B.) 233; 2 Thomp. Neg. 1294, § 91.)   In such case the damages suffered by the estate can have nothing to do with the amount of the recovery, but it is limited to the pecuniary loss sustained by those persons named in the statute, and who are left in a worse pecuniary position by reason of the death. (*Bradshaw* v. *R. R. Co.* L. R. 10 C. P. 189.)   Not so under our statute, where the object is to recover the loss sustained by the estate, and not to recover the pecuniary loss sustained by any particular individual or individuals.

By force of section 371, the personal representative, in the prosecution of the action and the distribution of the proceeds, represents collectively all who are interested in the continuance of the life, whether as creditors, heirs, or distributees.   The heirs or distributees have no interest in the recovery by right of action for a pecuniary injury sustained by them but only by virtue of kinship; and if the expenses of administration and debts of the deceased equal or exceed the assets of the estate, which include the damages recovered, the next of kin get no benefit from the right of action.   The difference in the two classes of cases is between the damage done to the estate and the damage done to the designated persons.   That to the estate, is measured as nearly as can be by the value of the life lost, and that to the beneficiaries by the value of the life lost to them.   Under our statute, the measure of damages being the value of the life lost to the estate not exceeding five thousand dollars, which is represented by the probable accumulated net savings of the deceased, it necessarily follows that had he not been wrongfully killed he probably would have left to his estate the amount of such savings for distribution as by law provided.   The rule invoked by defendant is, therefore, not the correct measure of damages

in this class of cases, and there was no error in refusing the instruction; nor do we think any rule can be laid down in this class of cases by which the damages can be ascertained with even approximate mathematical certainty. As we have before indicated, the amount must depend very much upon the good sense and sound judgment of the jury, upon the facts of each particular case, guided by proper instructions of the court.

The other questions presented by this record require but a brief notice. The overruling of the challenge, for cause, to the Juror Frizzell, the effect of the order of removal to the federal court, and of that court remanding the cause, for want of jurisdiction, and the evidence as to the mode of construction of the bridge, the fall of which caused the accident, either become immaterial in the view we have taken of this case, or are disposed of by the decision in the *Knathla case,* and require no further notice here, except to say that it seems the plaintiff was permitted to show not only the manner in which the particular bridge in question was constructed, but also how it ought to have been constructed. This evidence was calculated to mislead the jury and cause them to infer that ·defendant would be liable in this action if the bridge were not properly constructed, and especially was this so in the absence of an instruction by the court confining their examination to the issues made by the pleadings.

Instructions 5, 8, 9, and 10 were each properly refused. They are based upon the theory that if the bridge were on the afternoon or evening before the accident in a safe condition for the passage of trains, and that thereafter the same became unsafe or unfit for the passage of trains over the same by reason of being undermined by water, and the causes which led to the undermining of the bridge were such as would have put a reasonable and prudent man on inquiry to ascertain whether the bridge was in a safe condition, and that no such inquiry was made by any one on the train, plaintiff cannot recover if the jury should believe

such inquiry would have prevented the accident.   The defect in these instructions is in assuming that if the bridge were safe for the passage of trains on the evening before the accident, it was in good and proper repair, and in assuming that defendant was under no obligation to keep watch and oversight over the bridge or ascertain its condition after the storm or take proper precautionary measures to prevent accident to its employés.

Whether the negligence of the defendant, or of a fellow-servant of the deceased, or the flood, was the proximate cause of the injury, and whether defendant, by the exercise of reasonable care and vigilance, could have anticipated and prevented or provided against the accident, and whether it was the duty of the defendant in the exercise of reasonable care and prudence, under the facts of this particular case, to have sent men ahead of the train on which deceased was being carried to inspect and examine the bridge before attempting to go over it with the train, are all questions of fact for the jury.

The instructions that the defendant would not be liable for the negligence of its servants employed at the time of the accident to watch over and ascertain the condition of the track and bridges, were properly refused.   The duty to inspect its road and keep proper watch and oversight over it is the personal duty of the master, for the negligent performance of which it cannot exempt itself from liability by showing that it has delegated that duty to an employé.

The instructions, that the defendant was not liable in this action if the accident could have been prevented by an observance of the rules of the company by the persons in charge of the train upon which deceased was riding, were also properly refused.   This action proceeds upon the theory that the accident was caused by defendant's neglect in allowing the bridge in question to become out of repair and unsafe, and in failing to keep proper watch and oversight over it.   If defendant's negligence in this respect contributed to or caused the injury, it cannot escape liability

by showing that some of its servants in charge of the operation of the train were also negligent.   (*Grand Tr. Ry. Co.* v. *Cummings,* 106 U. S. 700; *Booth* v. *Boston & Albany R. R. Co.* 73 N. Y. 38; 29 Am. Rep. 97; McKinley Fel. Serv. ? 31.)

The judgment is reversed and a new trial ordered.