[No. 471. August 15, 1892.]

## ELLA LUTZ and MARION A. LUTZ, Plaintiffs in Error v. ATLANTIC & PACIFIC RAILROAD COMPANY, Defendant in Error.

Trespass on Case—Liability of Master for Negligence of Fellow Servant.—It was not the intention of the legislature, in the enactment of sections 2308–2310, Compiled Laws, to change the common law rule exempting a master from liability to his servant for the negligence of a fellow servant.

Id.—Injury to Railroad Employee—Instruction to Find for Defendant—Evidence.—In an action of trespass on the case against a railroad company for damages for the negligent killing of plaintiff's former husband, an employee of the company, where the evidence was of such character that, had the jury found for the plaintiff, it would have been the duty of the court to set aside the verdict, the court did not err in directing a verdict for the defendant.

Id.—Injury to Railroad Employee—Negligence of Fellow Servants—Proximate Cause—Liability.—Where, in such action, the declaration alleged that the defendant failed to furnish the deceased, who was in the defendant's employ as a freight conductor, with a properly constructed car such as was ordinarily used upon its road, but instead thereof wrongfully, negligently, and over deceased's protest, furnished him with an unsafe box car without doors or windows in the ends, or cupola in the top, through which approaching danger might be seen and averted, which deceased was induced to use upon the promise of defendant's agents that he would be furnished with a

proper car in a very short time, but which defendant failed to do; that, through the negligence of its servants, one of defendant's trains ran against the rear of the train driven by deceased, broke the same into splinters, and deceased was struck by its locomotive and flying splinters, and died from the effect of the injuries thus received; and there was no allegation that the accident was the result of deceased's not being able to see the approaching danger by reason of the absence of the windows and cupola in the car,—Held, on demurrer: The proximate cause of the accident was the negligence of the fellow servants operating the second train, not the failure of defendant to furnish a proper car. The action can not therefore be sustained. Nor could it be sustained if it were conceded that the proximate cause was the joint negligence of the deceased's fellow servants and the failure of defendant to furnish, within a reasonable time, a proper car.

ERROR, from a judgment for defendant, to the Second Judicial District Court, Bernalillo County. Judgment affirmed; FREEMAN, J., dissenting.

The facts are stated in the opinion of the court.

BERNARD S. RODEY for plaintiffs in error.

C. HAZELDINE and H. L. WALDO for defendant in error.

SEEDS, J.—This is an action of trespass on the case, brought by the plaintiffs in error against the defendant corporation, for the statutory damages for the negligent killing of the plaintiff's (Ella Sykes') former husband by the defendant. The declaration contains three counts. The first count declares upon the negligence of the fellow servants of the decedent, he being a conductor upon a freight train of the defendant. The second count declares upon the negligent, careless, and improper selection of the decedent's fellow servants by the defendant, and the retention of said fellow servants in its employ after full knowledge of their incompetency, and alleges that the killing was caused by reason of said incompetency. The third count declares upon the negligent conduct of the

defendant in furnishing the decedent with an improper, unsafe, and defective caboose, knowing at the time that it was unsafe and defective, but which the decedent used under protest, and only under and by reason of the promise made by the defendant to the decedent that he should be provided with a safe one in a very short time; and because of the negligence and carelessness of the decedent's fellow servants upon another train of the defendant's, running into and destroying the caboose in which the decedent was, by reason of which he was killed. To the declaration, and each count thereof, the defendant filed a demurrer. The court sustained the demurrer to the first and third counts, and overruled it as to the second; whereupon the defendant answered as to the second count. A jury was called, and after the plaintiff's evidence was in and they had rested, the court, upon motion of the defendant, instructed it to find for the defendant. The plaintiffs sued out a writ of error, and allege error in sustaining the defendant's demurrer to the first and third counts, and in instructing the jury to find for the defendant upon the trial under the second count.

1. The first count declared upon the negligence of the deceased's fellow servants, whereby he lost his life. Unless changed by statute, it is now the unquestioned law that damages can not be recovered for injuries sustained by reason of the negligence of fellow servants. Negligence of such servants of a common employer is part of the risk which public policy requires that an employee take in entering upon a service in which there are fellow servants. Priestly v. Fowler, 3 Mees. & W. 1; Murray v. So. Car Railroad Co., 1 McMul. 385; Farwell v. Boston & W. Railroad Co., 4 Metc. 49; Pierce, R. R. 358; 2 Ror. R. R. 1183; 1 Lawson Rights, Rem. & Pr., section 301; Beach, Contrib. Neg· section 102; Randall v. Baltimore & Ohio Railroad, 109 U. S. 478.

TRESPASS on case: liability of master for negligence of fellow servant.

Beach in his work objects strenuously to the reasoning upon which this rule of law is based, but admits that it is now universal, unless when changed by statute, as it has been in some jurisdictions. We are content to adopt the rule as the law for this jurisdiction, whatever may be the theoretical objections to it, based upon what may be thought to be purely logical grounds, until such time as the legislature sees fit to change it.

But the plaintiffs contend that the rule as above enunciated has been changed. The question for decision then is, has it been changed? Sections 2308-2310 Compiled Laws, New Mexico, provide, in substance, that, when "any person" comes to his or her death by reason of the negligence or carelessness or criminal action of an agent, officer, or other employee of a railroad company, that his or her representative may recover of the company $5,000. The contention is that "any person" in this statute has reference to any one whomsoever who may be killed, and hence includes one who may be a fellow servant. By further reading the statute it will be found that the words "any person or passenger" are used, which would seem, however, to throw doubt upon the real meaning of the words "any person," rather than to more definitely explain them. This statute is almost verbatim a copy of the Missouri damage statute. In that state it has received a decisive construction after a somewhat lengthy period of uncertainty. In Schultz v. Railroad Co., 36 Mo. 13, it was held that the general meaning of the words "any person" was the meaning which the legislature intended to attach to them, and that therefore, the common law rule of fellow servants taking the risk of each other's negligence, when not notorious and know to the employer, was abrogated. But this was not satisfactory, and in the case of Connor v. C., R. I. & P. Railroad, 59 Mo. 308, two of the five

judges vigorously dissented; Judge HOUGH in his dissent satisfactorily showing, to the writer's mind, that, whatever may be the sounder and more humane rule, the legislature never intended to change the rule as to the liability for negligence of a fellow servant by that statute, but only to give a cause of action to the representatives of a deceased person where none existed before, and to limit the extent of that liability. Finally, in the case of Proctor v. H. & St. Joe. Railroad Co., 64 Mo. 112, the supreme court of that state took the view of the case so ably expounded by Judge HOUGH, and it has remained the law of that state ever since.    Upon a similar statute the same words have received the same construction in Iowa (Sullivan v. Miss. &. Mo. Railway Co., 11 Iowa, 422); in Maine, (Carle v. B. & Pac. Railway Co., 43 Me. 271); and in Colorado (A., T. & S. F. Railway Co. v. Farrow, 6 Colo. 498).    The statute of this territory (sections 2308–2310) was adopted after the final decision in the Connor case in Missouri, and it was urged that it is the law that, when one jurisdiction adopts without change the statute of another jurisdiction, it also adopts the judicial construction placed upon it by that jurisdiction.    While this is so, yet we do not think it necessary in this case to rest our decision upon that principle but rather upon the broader principle that there is nothing in the statute itself, nor in the history of its adoption, which goes to show that it was the intention of our legislature to overthrow a rule thoroughly ingrained in the judicial holdings of the courts of the land, and in view of which it must now be held that all contracts for hire to corporations, in the absence of express stipulations, are made.    The action of the trial court in sustaining the demurrer to the first count was correct.

2.    The second count was predicated upon the assumed fact that the defendant company was negli-

gent in its selection of the fellow servants of the deceased Sykes, or in the keeping of them in its employ after knowledge of their incompetency had been brought home to it, and that it was through such incompetency that the deceased was killed. After the plaintiffs' evidence was all in, the jury was instructed by the court to find for the defendant, which it did. Of this action the plaintiffs complain. They insist that there was something to go to the jury, and that in instructing it to find for the defendant the court usurped the province of the jury, which was error. However, it is now the settled law of the supreme court of the United States, and of this court, that when evidence is of such a character that, should the jury find for one side rather than the other, it would be the duty of the court to set aside such verdict, it will, in the first instance direct a verdict for the party thus entitled to it. Randall v. Baltimore & Ohio Railroad Co., 109 U. S. 478; Candelaria v. A., T. & S. F. Railroad Co., 27 Pac. Rep. (N. M.) 497; Gildersleeve v. Atkinson, Id. 477. We have thoroughly read the evidence produced by the plaintiffs to sustain the allegations of their second count, but we are unable to see where there is anything which tends to support those allegations. The action of the court, therefore, was correct.

*INJURY to railroad employee: instruction to find for defendant.*

3. The real difficulty in this case grows out of the sustaining the demurrer to the third count. It will be necessary, therefore, in order that a complete understanding of the count may be had, to set out in extenso the material portions of the count. After the allegations of corporation, the place of doing business on the part of the defendant, its employ- ment of the deceased, and its duty to furnish proper, safe, and reliable cars, cabooses, and other machinery, the count continues as follows: "Yet, not regarding its duty and prom-

*INJURY to railroad employee: negligence of fellow servants; proximate cause.*

ises, in the premises, the said defendant did not
so furnish the said Sykes with all safe, properly
constructed, and reliable cars, locomotives, ma-
chinery, and tools for the proper conduct of his
conducting of trains as aforesaid, in this: That
after his engagement and entering the employment
as aforesaid, and some short time previous to the
happening of the event hereinafter mentioned, the
said defendant failed to furnish said Sykes with a
proper caboose or way car, such as is usually and ordi-
narily used upon said same railroad, and upon all other
like railroads, but instead wrongfully, negligently, and
carelessly gave and furnished him, for use upon his
said trains, against his consent and over his protest
(but which he was induced to take and use, under
faithful promises of the defendant, by its agents and
their servants, then and there to him made, that he
would be furnished with a proper caboose in a very
short time), a weakly built, common, unsubstantial
box car, without any platforms, bottom beams, springs,
bracing, or proper trucks, and without any doors in
the ends, or windows in the ends, or cupola or lookout
station in the top, through either of which approaching
danger might be seen and prevented, as is usually upon
cabooses and way cars upon other parts of said line
and other like roads. And said box car, used as a
caboose or way car as aforesaid, was so flimsily and
improperly constructed it would, and did, during its
use by said Sykes, aforesaid, easily become derailed
and jump the track aforesaid, all of which was then
and there known to said defendant; but the said George
W. Sykes, so relying upon the promises of the defendant
so made to him as aforesaid, that it would in a very short
time furnish him with a good, safe, and proper caboose,
did, relying upon said promise, continue in said em-
ployment until the thirtieth day of March, A. D. 1888,
at which said date, at, to wit, the county of Bernalillo,

in the territory of New Mexico, said George W. Sykes was, pursuant to the order of the defendant, proceeding with one of its trains with the aforementioned box car, being used as a way car, with all due and proper care and diligence, eastward in said county, toward said Albuquerque, and when he had so proceeded to a point on said railroad, about four miles east of the small station of San Jose, and while still, as aforesaid, exercising all due and proper care and diligence in the premises, the defendant then and there being possessed, as aforesaid, of a certain other locomotive engine and train of cars attached thereto, which said latter loco · motive engine and train of cars were then and there under the care and management of divers, then servants of the defendant, who were then and there driving the same upon and along said railroad, near and toward the point aforesaid, also in an easterly direction, and the said defendant then and there, by its servants last aforesaid, so carelessly, improperly, negligently, and unskillfully drove and managed the said locomotive engine and train of cars that, by and through the carelessness, negligence, unskillfulness, and improper conduct of the defendant, by its said servants in that behalf, and also by and through the negligence, carelessness, default, and improper conduct and wrongful act of the defendant in defaulting, refusing, and neglecting to furnish a proper caboose and way car to Sykes, as was its duty to do, the said locomotive engine then and there ran and struck, with comparative force and violence, upon and against the rear of the train and box car, being used as a caboose as aforesaid, and being conducted with all due and proper care and diligence by the said George W. Sykes, and by reason of the poor and improper construction of the same, broke the same into splinters, and said George W. Sykes was then and there, with great force and violence, struck by said locomotive, and by

splinters of said box car being used as aforesaid, and thrown with great violence from out of said car," from the effects of which he afterward died.

To this count the defendant demurred, and assigned several reasons therefor, among them that the said Sykes voluntarily used the said caboose; that it does not appear that there were any latent or hidden defects in or about the way car; that the negligence, if any, was the negligence of Sykes' fellow servants; and that the count is in many other respects uncertain, informal, and insufficient. The court sustained the demurrer. While this demurrer specifically sets out the grounds of objection, yet it is in substance a general demurrer, and under it any objections to the substance of the count may be urged whether assigned or not. 1 Chit. Pl. 663; Gould, Pl., p. 435, sec. 19. It is elementary that upon demurrer all facts which are well pleaded are admitted to be true. Therefore it must be considered that the facts in this count as plead, which are well plead, are before us with the same effect as though found by a jury.

At the argument counsel for both parties rested their contention solely upon the alleged negligence of the company in failing to provide the deceased, Sykes, with a safe and proper caboose, within a reasonable time after having promised him to do so. The position of the plaintiffs was that, as the defendant knew of the unsafe condition of the way car or caboose, and had promised to provide another in its stead, it assumed all risks from dangers to the deceased during a "reasonable time" which he might use it while waiting for the new car; and that such use was not, upon the part of the deceased, contributory negligence. The defendant contends, upon the other hand, that it is shown that the defects, if any, in the caboose, were patent and evident as immediately dangerous, and, therefore, that the rule contended for by the plaintiffs did not apply, but that

the use of such car, under the circumstances alleged in the count, notwithstanding the promise of the defendant, was contributory negligence on the part of the deceased, and that his representatives can not recover.   "If the servant complain of the defect to the master, and the latter promises to remedy or repair it, the servant, by remaining on this assurance for a reasonable time in the service, will not be considered to have waived it, and the question of a reasonable time will be for the jury."   1 Lawson, Rights, Rem. & Pr., sec. 312, and cases cited; Gulf, Colorado & Santa Fe Railway Co. v. Brentford, 23 Am. St. Rep. 317, and annotated note; Hough v. Railway Co., 100 U. S. 213.   In this last case the court holds that it is not contributory negligence, as a matter of law, to remain in a dangerous employment for a reasonable time after a promise by the employer to remedy the defect complained of, but that it was a question for the jury to say whether it was contributory negligence to so remain.   This is unquestionably the general rule of law where an employee gives notice to his employer of defects in the machinery that he is using, and the employer promises to remedy the defects in a short time, unless such defects are so evidently dangerous as that it would be reckless and foolish for the employee to use the defective machinery, even under a promise that it should be immediately remedied.   The defendant contends in this case that the allegations of this count, admitted by it to be true, show:   First, that the deceased used the defective car for a longer period than by any possibility could be considered a reasonable time; and, second, that the defects set out in the count are so evidently dangerous that only a reckless person, one utterly careless of his safety, would have used the caboose without its being, at least, remedied.   That, therefore, as a matter of law, he did contribute to his death, and that the action can not be sustained.   In the case of District of Columbia

v. McElligott, 117 U. S. 621, the court carefully limit
the ruling in the Hough case, supra. That was a case
wherein McElligott was working in a gravel pit for the
defendant. There was an overhanging bank, under
which he with others was working, which threatened
to break off and fall upon them. It was alleged that
the supervisor of the work was notified of this danger,
and promised to have it remedied immediately. Under
that promise the plaintiff continued to work for but a
short time, and while so working was injured. The
court, in discussing the question of his contributory
negligence, said: "If liability might come upon the
district for the negligence of its officers controlling his
services, he was under an obligation to exercise due
care in protecting himself from personal harm while
discharging duties out of which such liability might
arise. If he failed to exercise such care, if he exposed
himself to dangers that were so threatening or obvious
as likely to cause injury at any moment, he would,
notwithstanding any promises or assurances of the dis-
trict supervisor of the character alleged, be guilty of
such contributory negligence as would defeat his claim
for injuries so received." Page 633.

If, then, the dangers were as great by reason of
the alleged imperfections of the way car as are admitted
by this demurrer, it would seem as though the case last
cited went very far toward sustaining the defendant's
contention that the deceased, Sykes, contributed by his
own negligence to his death; and, if so, then clearly,
under the law, his representatives can not recover in
this action. But whether they can or not, under this
view of the law, yet we think that the action of the
trial judge was correct upon another view of this count.
The real question presented by this count, and the
demurrer thereto, is, what was the proximate cause of
the injury to the deceased? Was it the negligence of
the fellow servants upon the second train, or was it the

negligence of the company in failing, within a reasonable time, to provide the deceased with a suitable and proper way car, or was it the combined result of both negligences? If it was the first negligence, then clearly the action can not be sustained, for in the first part of this decision we have seen that the law is that no recovery can be had for the negligence of a fellow servant. If the proximate cause was the resultant of the two negligences, and one of those negligences is not actionable, then there is no cause of action upon which the suit can be predicated, for the proof must correspond with the allegation, and there would be no proof of the negligence of the fellow servant allowed. It is admitted by the demurrer that the facts are as alleged, if properly pleaded. But, if the plaintiffs can not recover for the negligence of a fellow servant, then that negligence, as an alleged cause of action, may not be so pleaded, and the demurrer in this case does not admit it as an actionable fact. Therefore, the count is not good, upon the theory that the injury was the result of the joint negligences of the fellow servants of Sykes, and the failure upon the part of the company to furnish a safe caboose. It would seem that the fair interpretation of this count was that it does charge the injury to be the result of the joint negligence of the fellow servants and the company, and hence that it was not a legal statement of a wrong upon which a suit might be predicated. But, conceding that the negligent action of the fellow servants upon the second train is alleged by the plaintiffs simply as a mere condition of the injury; and that they insist that the proximate cause of such injury was the negligence of the company in failing to furnish a proper and suitable way car within a reasonable time as it had promised to do, we have to inquire, was such negligence the proximate cause of the death of Sykes? What is a "proximate cause?" Definitions have been given by text-writers and in adjudicated cases which

will aid us materially in answering this question,
though, as a matter of fact, each case will have to, in a
great measure, depend upon its own particular facts in
ariving at what is the proximate cause of an alleged
injury. "A 'proximate cause' may be defined as that
cause which, in natural and continued sequence, un-
broken by any efficient, intervening cause, produced
the result complained of, and without which that result
would not have occurred." 16 Am. &. Eng. Encyclo-
pedia of Law, 416. This is the general rule "where no
intervening efficient cause is found between the original
wrongful act and the injurious consequence complained
of." Another definition found in the same authority,
and more particularly applicable here, is, "in order to
warrant a finding that negligence, or an act not
amounting to wanton wrong, is the proximate cause of
an injury, it must appear that the injury was the nat-
ural and probable consequence of the negligence or
wrongful act, and that it was such as might or ought
to have been foreseen in the light of the attending cir-
cumstances." This rule is sustained by the highest
authority. Milwaukee Railway Co. v. Kellogg, 94 U.
S. 469, 475; Hoag v. Lake Shore Railroad Co., 85 Pa.
St. 293; 2 Thomp. Neg. 1085, sec. 2; 16 Am. & Eng.
Encyclopedia of Law, 436, and cases cited under note 4.

It must be remembered in this case that the negli-
gence complained of is the failure upon the part of the
company to furnish a proper caboose, which from its
construction would not jump the track; that should be
strongly built; that should have platforms, bottom
beams, springs, bracings, proper trucks, doors, end
windows, and cupola. Now, under these definitions,
and the law as laid down in the cited cases, the ques-
tion is, could this defendant have foreseen, by any
ordinary or any extraordinary foresight, that, because
of its negligence to furnish such a caboose, another
train upon its tracks would negligently run into this

caboose, rather than into one properly built and fitted up? If the second train is eliminated from the consideration of the case, was the negligence of the company to furnish a proper caboose in any manner whatever the cause of the death of Sykes? How, then, can that negligence be said to be the proximate cause of the injury? Supposing that the deceased had been furnished with a proper way car, and that a second train had run into it with comparative force and violence, is there any presumption from the fact that it was a proper way car that an accident would not have happened? Would not the way car have been thrown from the track, and the deceased with it, and would not the result of the force and violence of the collision and of the splinters from the way car, been, in all probability, the same as in this case? If it would, then the proximate cause of the injury was not the negligence in failing to furnish the proper way car, but the collision with the second train. In other words, if you take away this bad caboose, and place a good one in its stead, leaving all the other facts as alleged in the count, you will have the accident and the injury; but, if you take away the negligence of the fellow servants in the second train—it makes no difference whether there is an imperfect caboose or not—there will be no accident, and the negligence in not furnishing a proper caboose would not be the natural or probable cause of the injury, and, under the ruling of the courts, would not be the proximate cause of Sykes' death.

If because of the weakness or lack of support, or of platform, or of bottom beams, the car had broken down, or jumped the track, and the injury had been caused, a far different case would have been presented; or if because of the lack of windows, and without any other alleged negligence, the way car had been run down, and the deceased injured, because he could not see the approaching danger, which he was looking for,

the case would be different; but there is no allegation in this count which can be construed into meaning that Sykes came to his death by reason of the absence of the windows. We are not to be understood as holding that, if there had been proper allegations of the defects in the way car being the primary cause of injury to the deceased—the fact that the force which caused those defects to operate disastrously was brought into action by the negligence of the fellow servants of the deceased in the second train—there would have been no cause of action. If the allegation had been, for instance, that, by reason of the negligence of the defendant in failing to furnish a way car with windows in the end, and with a cupola, the deceased was unable to see approaching danger, for which he was on the lookout, and, therefore, he was injured, he probably would have alleged a good cause of action. It is true that the plaintiffs alleged generally in this count that the way car had no doors or windows in the ends by "which approaching danger might be seen and prevented," but that is all. The allegation as to his injuries is that, "by reason of the poor and improper construction of the same (referring to the way car), broke the same into splinters," and that Sykes was then and there struck by said locomotive, and by the splinters of said box car. This was the cause of his death, and we are unable to see how the failure to furnish a way car with proper end doors and windows, upon these allegations, can by any construction be considered the proximate cause of the death. The following cases fully sustain, in our judgment, the above holding: Pease, Adm'x, v. Chicago & N. W. Railway Co., 20 N. W. Rep. (Wis.) 908; Fowler v. Chicago & N. W. Railway Co., 21 N. W. Rep. (Wis.) 40; Hayes v. Western Railway Co., 3 Cush. 271; Whittaker v. Delaware Co., 3 N. Y. (Sup.) 576; Memphis Railroad Co. v. Thomas, 51 Miss. 637; Gilman v. Eastern Railroad Co., 10 Allen, 233; King v. Boston, etc.,

Railroad Co., 9 Cush. (Mass.) 112; Handelun v. B., C.
R. & L. Railway Co., 72 Iowa, 709, 32 N. W. Rep. 4;
Campbell v. City of Stillwater, 20 N. W. Rep. (Minn.)
320; Hoag v. Railroad Co., 85 Pa. St. 293; Township v.
Watson, 9 Atl. Rep. (Pa.) 433. As, then, the dece-
dent, under the facts as plead in this count, met his
death by reason of the negligence of the fellow servants
on the second train, which was, in our view of the case,
the proximate cause, we find no error in the rulings of
the court below, and they are, therefore, affirmed.

McFie, J.—I agree with the conclusions of the
court, that the court below did not err in sustaining
the demurrer to the first count of plaintiffs' declaration,
and that the court below properly instructed the jury
to find for the defendant on the trial had, upon issue
joined under the second count of plaintiffs' declaration,
as the proof clearly failed to sustain the allegations of
the declaration. I agree with the conclusions of Mr.
Justice Seeds that the court below properly sustained
the demurrer of the defendant to the third count of
plaintiff's declaration. The first count declared upon
the negligence of fellow servants of the deceased; the
second count charged the negligence of the defendant
in the selection and retention of incompetent fellow
servants, after full knowledge of their incompetency,
and that decedent was killed by reason of such incom-
petency; and the third count, that the decedent was
killed by reason of the combined negligence of the
defendant and fellow servants. I do not question the
right of recovery, in a proper case, for the combined
negligence of master and fellow servant, where the
negligence of each contributed to the injury, but the
third count of plaintiffs' declaration is subject to the
demurrer because it fails to point out with certainty
wherein the negligence complained of on the part of
the defendant contributed to the injury. It is not

sufficient to allege negligence on the part of the defend-
ant. It must also be shown that the injury complained
of resulted from the specific negligence complained of.
It will not do, in actions of this nature, to leave it a
matter of conjecture as to whether the injury resulted
from the negligence complained of or not. The decla-
ration must state a cause of action, and if it fails to do
so, either by insufficient allegations, or by alleging
matter that destroys the right of action, it must yield
to a demurrer. The negligence of the defendant is
alleged to be that it furnished deceased with an
improper, unsafe, and defective caboose, knowing that
it was unsafe and defective; and, although defendant
promised to do so, it failed to furnish the deceased with
a proper caboose or way car, such as is usually and
ordinarily used upon said same railroad, and upon all
other like railroads, but instead wrongfully, negligently,
and carelessly furnished him with a weakly built, com-
mon, unsubstantial box car, without any platforms,
beams, springs, bracing, and proper trucks, and with-
out doors and windows in the ends or cupola, or lookout
station on the top. These concluding allegations are
simply descriptive of a box car caboose, as distinguished
from the usual caboose or way car used by that and
other roads; not that the box car was particularly
defective, by being broken and unfit for use, but
because it was a box car, whereas the company had
promised to give plaintiff a regular caboose, and had
failed and neglected to do so. But, suppose the defend-
ant was negligent in this respect, we fail to see how
such negligence caused or contributed to the injury
complained of, much less became the proximate or
promotive cause, as defined by law. "That, in deter-
mining what is proximity of cause, the true rule is that
the injury must be the natural and probable conse-
quence of the negligence, such a consequence as, under
the surrounding circumstances of the case, might and

ought to have been foreseen by the wrongdoer as likely to flow from his act." Township of West Mahanoy v. Watson (Sup. Ct. Pa., May 8, 1887), 9 Atl. Rep. 433. In the case of Hoag v. Lake Shore, etc., Railroad Co., 85 Pa. St. 293, Mr. Justice Trunkey, then presiding judge of the common pleas of Venango county, in his charge to the jury on the trial of the above named case, said: "The immediate, and not the remote cause, is to be considered. This maxim is not to be controlled by time or distance, but by the succession of events. The question is, did the cause alleged produce its effects without another intervening cause; or was it to operate through or by means of this intervening cause." "The question always is, was there an unbroken connection between the wrongful act and the injury—a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." And in same opinion says: "We do not say that even the natural and probable consequences of a wrongful act or omission are in all cases to be chargeable to the misfeasance or nonfeasance. They are not, when there is a sufficient and independent cause operating between the wrong and the injury. In such a case, the resort of the sufferer must be to the originator of the intermediate cause. But, when there is no intermediate efficient cause, the original wrong must be

considered as reaching to the effect and proximate to it. The inquiry must therefore always be whether there was any intermediate cause, disconnected from the primary fault, and self-operating, which produced the injury." Milwaukee & St. Paul Railroad Co. v. Kellogg, 94 U. S. 469. To the same effect, in Massachusetts, it is held "that the proximate cause is the object of inquiry, and when discovered is to be regarded and relied upon. We can not reason as to chances or probabilities. They are held to be too remote to form the basis of judicial decision." Hayes v. Western Railroad Co., 3 Cush. 271.

A case involving the same questions as the one under consideration is found in 61 Wis. 159 (Fowler v. Chicago & N. W. Railroad Co.). In it a switchman was injured, while making a coupling, by an engine being backed down upon him. The engine was not a regular switch engine, but it was a regular road engine, being used for switching purposes, and had been so used for sixteen days. The regular switch engine would not have had the goose-neck projection by which he was injured, and would have been so constructed as not to obstruct the view backward. It was held that the negligence of coservants, and not any insufficiency or unfitness in the engine itself, was the proximate cause of the injury, and that the company was not liable. About the same time that court held, where the chain coupling was broken, and the brakeman had to go under the platform to make the coupling, and while he was under it the conductor, not knowing his position, gave the signal to the engineer to move up, and thereby the brakeman was killed, that it was the negligence of the conductor, and not the imperfect coupling, that was the proximate cause of the injury, and, therefore, the company was not liable. Pease v. Chicago & Northwestern Railroad Co., 61 Wis. 163, 20 N. W. Rep. 908. In Henry v. St. Louis, etc., Railroad Co., 76 Mo. 288; See 12

Am. & Eng. R. R. Cases, 1361, it appeared that the plaintiff was wrongfully commanded to get off a caboose of the defendant, where he had a right to be. He obeyed the command, and while upon the ground stepped upon a track, where he was run upon and injured by a train. Hough, J., speaking for the court, said: "It is, perhaps, probable that, if the plaintiff had not been ordered out of the caboose, he would not have been injured, but this hypothesis does not establish the legal relation of cause and effect between the expulsion and the injury. If the plaintiff had not left home, he certainly would not have been injured as he was, but his leaving home could not, therefore, be declared to be the cause of his injury. As the plaintiff's injury was neither the ordinary, natural, nor probable consequence of his expulsion from the caboose, such expulsion, however it might excite our indignation in the absence of any regulation of the defendant to justify it, can not be considered in this action, and the legal aspect of the case is precisely the same that it would have been if no such expulsion had taken place." Where several concurring acts or conditions of things, one of them a wrongful act or omission, produce an injury, such wrongful act or omission is to be regarded the proximate cause of the injury, if the injury be one which might reasonably be anticipated from the act or omission, and which would not have occurred without it. Campbell v. City of Stillwater (filed July 18, 1884), 20 N. W. Rep. 320.

From these decisions, the proximate cause of the injury in this case was not the negligence of the defendant in failing to furnish the usual way car or caboose, because the car used by the deceased, although a box car, was making its run regularly, and, so far as the declaration shows, was rendering as safe and complete service as if another car had been furnished, until it was dashed into by another train. What injury

would have been done the deceased, if the second train had not run into the first? Clearly, none whatever. It is pure speculation to say that any injury would have resulted, and the law abhors speculation. The plaintiff alleges that this box car was liable to jump the track, as it had done before; but a complete answer to that is that it did not do so, but, on the contrary, was making its regular run. If the declaration had alleged that the car had jumped the track, and by reason thereof the deceased was killed, a cause of action not demurrable would be stated, because it would be apparent that the injury resulted from the negligence of the company in furnishing a car that was liable to run off the track, and in failing to furnish one that was not. The negligence would appear to be the immediate and proximate cause of the injury, there being no intervening, independent cause between the negligence and the injury.

The third count of this declaration, however, presents a very different case. Here we have the intervention of an independent cause, which actually caused the death of the deceased—a rear-end collision by another locomotive and train, managed by coservants of the deceased. The averment is as follows: "The said locomotive engine then and there ran and struck, with comparative force and violence, upon and against the rear of the train and box car, being used as a caboose aforesaid, and being conducted with all due and proper care and diligence by the said George W. Sykes, and, by reason of the poor and improper construction of the same, broke the same into splinters, and the said George W. Sykes was then and there, with great force and violence, struck by said locomotive, and by splinters of said box car being used as aforesaid." In view of this averment that the car was broken to splinters by the force of the collision, it seems idle to contend that, if the defendant company

had furnished the deceased the kind of a car he desired he would not have been killed.   The collision, and the injury resulting in the death of the deceased, were almost simultaneous occurrences.   There can be no reasonable doubt as to the cause of the death of Sykes. He was killed by the second train dashing into the first, and this was the proximate cause of the injury. Having discovered the proximate cause, the inquiry stops there, because to go back of it would be both endless and useless.   Lewis v. Railroad Co., Am. & Eng. R. R. Cases, vol. 18, p. 271.

It is true the plaintiff avers, in general terms, that the defendant's failure to furnish another car was also the cause of the injury; but, in my opinion, she wholly fails to point out in what way it caused or contributed to the injury.   The averment seems to me to be destitute of foundation, and in the nature of a predicate for the introduction of uncertain and improper evidence. In the case of Toledo, Wabash & Western Railway Company v. Jones, 76 Ill. 311, where the plaintiff alleged negligence in keeping a crossing in repair, where he received an injury by a collision of a train with plaintiff's wagon, there was no averment that the condition of the crossing contributed to the injury, but the gravamen of the action was the failure to give the statutory signal, and failure to slack the speed, held, that evidence could not be given to show the condition of the crossing, * * * nor can its condition be shown as a makeweight to sustain an entirely different charge, in which the condition of the crossing is not an element. In this case the wrong complained of against the company is that they failed to furnish a certain kind of car for the use of said employee, but it is not averred that their failure in this respect was the cause of the locomotive running into the car.   But it is charged that the collision was caused by the wrong, negligence, and incompetency of the defendant, by and through its

servants. An employer is not liable for the negligent acts of coservants to each other. Tuttle v. Milwaukee Railway, 122 U. S. 189.

Therefore, so far as it attempts to charge the defendant with the negligent acts of coservants, the count is bad. It is an immaterial inquiry which of these fellow servants were at fault, but it is very clear that both of these trains did not have a right to the same part of the track at the same time. One or the other was in the wrong, and, to create a liability against the defendant, the declaration must aver the particular act or omission of the defendant that caused the collision, and this it does not attempt to do. An omission that was not the proximate cause would not be sufficient. In this respect the count does not state a cause of action against the defendant, for it avers the proximate cause of the injury to have been the intervention of an independent locomotive, which ran into the car, as in Township v. Watson, above cited. Eliminate this second train from consideration, and there is nothing left upon which to found an action for damages against the defendant. There is no averment in this count that the company knowingly selected incompetent servants. That was the subject of the second count, upon which the plaintiff secured a trial, and therefore such can not be considered as an element of damages under this count. The demurrer being interposed, the facts well pleaded were admitted. The demurrer challenges the sufficiency of the facts stated to constitute a cause of action in law. The trial is by the court, as the matter in issue is one of law, and not of fact. The court below found, upon the facts stated, that the negligence of coservants of the deceased was the proximate cause of the injury complained of, and not the combined negligence of defendant and coservants, as alleged in the count, and hence sustained the demurrer. The plaintiff stood on his demurrer, refused

to amend, and judgment was properly given for the defendant.

FREEMAN, J. (dissenting).—I am unable to agree with the majority of the court in the conclusions reached in this case. I agree that the doctrine of the nonliability of the master to the servant for the negligence of a fellow servant seems to be now well settled. I shall not undertake to review the numerous authorities, nor to discuss the many hotly contested cases through which this questionable doctrine has passed. It has come up "through great tribulation," and is possibly entitled to a rest. But the decision of a majority of the court in this case proceeds a step further, and that, too, in the wrong direction, to exempt the master, not only from the consequences of his servant's negligence, but from that of his own, if it appear that a coservant contributed to the result. This proposition is, to my mind, too dangerous in its tendency, and too far reaching in its consequences, to be allowed to pass without dissent. That the grounds of my dissent may not be misunderstood, I will state what I understand to be the precise issue. The plaintiff alleges, in substance, that the injury for which redress is sought was the combined result of the conduct of the injured party's fellow servant and the use of defective machinery (a way car) in the hands of the injured employee, which he was induced to use by the promises of the employer to repair. To this count a demurrer was interposed and sustained. The opinion of a majority of this court affirms the action of the court below.

I shall endeavor to sustain the proposition that, while the master is not liable to one servant for the wrongful act of a fellow servant, he is nevertheless liable for his own wrong; and that he can not escape that liability by showing that the negligence or wrong of the injured party's fellow servant contributed to the

result; and that while an employee assumes the ordinary risks incident to his employment, among others, breakage of machinery, and injury from defects in machinery, yet if the servant discover defects in such machinery, and point them out, and the master promise to repair within a reasonable time, and the servant is induced thereby to continue in the use of such defective machinery, the danger to such use not being so imminent or impending as to deter a man of ordinary prudence, and while thus employed he is injured by such machinery, he has a right of action against the master. 6 Hurl. & N. 937; 76 Pa. St. 389; 20 Minn. 9; 62 Mo. 35; 100 U. S. 218.

Before, however, inviting attention to the discussion of the main question involved, I desire to suggest, with great respect, that it seems to me the reasoning employed by the majority to sustain the demurrer is at fault, in that the conclusion is reached from two absolutely contradictory premises. It is held that the count is defective, in that it shows that the dangerous character of the machine (way car) was so apparent that it was contributory negligence to use the car. This for the purpose of bringing the case within the rule laid down by the supreme court of the United States in the case of District of Columbia v. McElligott, 117 U. S. 621. This position, however, is not only abandoned, but entirely overturned, in the effort to establish the contrary proposition, that the defective machinery, so far from being so palpably dangerous as to prevent its use by an ordinarily prudent man, was not in fact at all dangerous, and did not in fact even contribute to, much less cause, the accident. The rule as to the effect to be given to the negligence of a fellow servant, when combined with the negligence of the master, is thus stated in note 10, page 981, Thompson on Negligence: "It is but another expression of rules already announced, to say that, if the negligence of the master combines

with the negligence of a fellow servant, and the two contribute to the injury, the servant injured may recover damages of the master." The learned author cites, in support of this proposition, 76 N. C. 320, wherein the doctrine is laid down in this language by READE, J.: "The decisions, both English and American, go very far toward the conclusion that one servant can not recover of the employer for any injury which results from the negligence of a fellow servant, in a business common to both. There may be exceptions, but, grant that to be so for the sake of argument, yet it is not so where the employer contributes to the negligence of a fellow servant, or to the injury; as if he employ an unfit servant, or, as in the case of a bad engine, knows that it is bad, and fails to repair it. So in this case, if the defendant answers that plaintiff can not recover because the injury resulted from the negligence of his fellow servant, the engineer, the plaintiff may reply that the defendant contributed to the negligence of the engineer, and to the injury, by having a bad engine."

The same doctrine was laid down in the case of Gould v. Boston & Albany Railroad Company, 73 N. Y. 38. The facts in that case were substantially as follows: The plaintiff was engineer in the defendant's employ, and, as such, went with a freight train from Greenbush on the morning of February 3. This train was preceded by one under an engineer named Hughes, with seventeen cars, two brakemen, and a conductor. Plaintiff's evidence tended to show that three brakemen were necessary to such a train, and were usually sent. One or two other trains had preceded it the same morning. There was a head conductor, Rockefeller, who gave the conductors directions as to what cars were to go in the different trains. He also assigned the brakemen to go with the several trains. After receiving instructions, trains were started by, and were each

under the control of, each conductor.   Three brake-
men had been assigned by Rockefeller, and were ready
to go with Hughes' train of seventeen cars on the morn-
ing in question, but one overslept himself, and failed
to go, and the conductor of the train started without
him, and without giving any notice to the head con-
ductor, Rockefeller, of the absence of the third brake-
man.   Hughes' train, upon arriving at Chatham, was
stopped to take coal upon the engine, as was customary.
A train ahead of it still stood at the coal pile tak-
ing coal, and Hughes' train stopped and stood behind
it for some ten minutes.   The conductor and one brake-
man got off and went forward to be ready to put on
coal.   When the forward train had gone, Hughes star-
ted his train up to get to the coal pile.   The train broke
in two and eleven cars ran back.   Upon them was the
other brakeman, named Losty, who tried in vain to
stop them.   They collided with plaintiff's train, and he
was injured.   In this case it was held that the company
were liable.   Say the court, ANDREWS, J., delivering
the opinion:   "The rule that the master is not liable
for the negligence of a coservant does not, however, go
to the extent of exempting him from liability in every
case when it appears that he did not himself do or
direct the doing of the negligent act, or even when the
immediate negligence is that of a person who in some
sense was the coservant of the person injured.   There
are certain duties which concern the safety of the serv-
ant, which · belong to the master to perform, and he
can not rid himself of responsibility to his servant for
not performing them, by showing that he delegated
the performance to another servant, who neglected to
follow his instructions, or omitted to do the duty
intrusted to him.   The duty of the master to select
competent servants, and to provide safe implements
and machinery for the use of his servants, belongs to
this class.   The rule that the servant takes the risks of

the service 'supposes,' says Lord CRANWORTH, 'that the master has secured proper servants and proper machinery for the conduct of the work.'" Citing Barton Shill Coal Co. v. Reid, 3 Macq. 275. It is there held that the duty to provide competent servants and proper machinery is a duty at all times resting upon the company, which it was bound to discharge for the protection of all persons, its servants as well as others, and which, if neglected and injury to a servant resulted from the neglect, gave a right of action, notwithstanding the fact that the immediate negligence was that of coservants intrusted with such performance. The rule is thus stated in the case of Paulmier, Administrator of Cohart, v. The Erie Railroad Company, 31 N. J. Law, 155: "The rule already referred to is that the master is not responsible to one servant for the ill consequences of the negligence of a fellow servant in the course of common employment. The reason for this rule is that, as the master can not prevent carelessness in his servants, it is reasonable to presume each servant agrees to run the risk of that which he knows, in the nature of things, to be inevitable. But the servant does not agree to take the chance of any negligence on the part of his employer; and no case has gone so far as to hold that, where such negligence contributes to the injury, the servant may not recover. It would be both unjust and impolitic to suffer the master to evade the penalty for his misconduct in neglecting to provide properly for the security of his servants. Contributory negligence, to defeat a right of action, must be that of the party injured."

In the case of Cayzer v. Taylor, 10 Gray (Mass.), the cause of action was stated substantially as follows: The defendant negligently managed his engine, and did not provide a competent and suitable engineer and boiler and engine and pump and gauge and appendages and machinery and precautions for safety used

therewith, but knowingly and carelessly provided such as were not competent and suitable, and sufficiently safe, and knowingly and carelessly continued the same in use, and improperly used them while out of order and unsafe, either solely or in connection with his servants. There was a verdict for the plaintiff, and, on appeal to the supreme court, it was said by THOMAS, J., delivering the opinion: "It is now well settled law that one entering into the service of another takes upon himself the ordinary risks of the employment in which he is engaged, including the negligent acts of his fellow workmen in such employment [citing Farwell v. Boston & Worcester Railroad Co., 4 Metc. 49; King v. Boston & Worcester Railroad Co., 9 Cush. 112; Gillshannon v. Stony Brook Railroad Co., 10 Cush. 228]. It has not been settled that the master is not liable for an injury which results from the employment of an incompetent servant, or use of a defective instrument. If the defendant employed a competent engineer, and used a boiler properly constructed and guarded, he would not be responsible for the injuries resulting from an act of carelessness or negligence of such an engineer; but we are not prepared to say that if one uses a dangerous instrumentality without the safeguards which science and experience suggest, or the positive rules of law require, he is not to be liable for an injury resulting from such use, because the negligence of one of his servants may have contributed to the result, or because a possible vigilance of the servant might have prevented injury. The very object and purpose of a safeguard, like the fusible plug, or protection against the occasional carelessness and negligence of the engineer. It is intended to be in some degree a substitute for his vigilance, to keep watch if he nods. To say that the master should not be responsible for an injury which would not have happened, had a safeguard re-

quired by law been used, because the engineer was negligent, would be to say, in substance and effect, that he should not be liable at all for an injury resulting from the failure to use it.   *   *   *   The counsel for the defendant asks of us a liberal application of the principle by which the servant is presumed to assume the risks of the business, and, among others, the negligence of his fellow servants, for the protection of the master.  The principle should not be so extended as to impair in the least degree the obligation resting upon the master in the prosecution of a business, involving unusual risks of health, or life or limb, to employ well guarded instruments, with competent engines.'' Continuing the quotation from the note already cited from Thompson on Negligence, it is said: ''This [the liability of the master for injuries to servants] happens where the negligence of the master in furnishing defective machinery or appliances, or an insufficient force of colaborers, combines with the negligence of the servants whose duty it is to oversee and use the particular machinery, whereby another servant is injured; or where the negligence of the master in selecting an incompetent servant combines with the negligence of such servant, or when the negligence of a railroad company in not furnishing a sufficient number of workmen for the management of a train, combines with the negligence of a particular servant in starting a train while insufficiently manned.   *   *   *   Perhaps a better expression of the rule is that given in the headnote of Cayzer v. Taylor, 10 Gray, 274, 'that the master is liable to his servant for injuries resulting from a defect in his machinery, although the negligence of a fellow servant contributes to the accident.' '' The doctrine is thus stated by Mr. Wood, at page 685 of his work on Master and Servant: ''The servant, although he may know that the instrumentalities of the business

are not in good repair or condition, is not therefore necessarily chargeable with negligence in remaining in the master's employ, and using them, unless real danger therefrom is apparent. In all cases were there is any doubt, the question is for the jury." "The master," says the same author, at page 687, "is bound to exercise reasonable care to prevent accidents to his workmen. He is bound to furnish suitable machinery, and see that it is properly protected and kept in proper repair." The case of Snow v. Housatonic Railroad Co., 8 Allen, 441, was an action against the railroad company to recover damages incurred by the plaintiff, who was injured while endeavoring to uncouple the train. The proof showed that the accident was the result of a defect in the road, of which defect the plaintiff had knowledge. BIGELOW, J., in a very able opinion, wherein he reviewed the questions relating to the relations existing between master and servant, held that the continuance in the service of the company by the plaintiff after knowledge of the defect was not of itself evidence of such negligence as to defeat the action, and that in all such cases the question of negligence on the servant's part is a question for the jury. The rule that the master is liable for an accident growing out of the use of defective machinery by the servant is thus laid down in Wood, Master and Servant, section 378: "But if there is any evidence that tends to excuse the plaintiff from the imputation of negligence on his part, as that he had called the attention of the master to the defect, and he had promised to repair it, or if the danger was not obvious, or if he incurred the risk by the express direction and command of the master or his agent, and the danger was not inevitable or a necessary result of performing the service, then it is a question for the jury whether or not the performance of the service, or his acts at the time of the happening of the injury, were negligent in

fact.   Where the servant, being aware of the danger
of the service, complains to the master, and he prom-
ises to remedy the defect, the master is liable for
injuries resulting to him therefrom, and he is not
chargeable with contributory negligence by remain-
ing in the service, unless the danger is so great
that a man of ordinary prudence would not remain.''
In support of this proposition a long line of authori-
ties is cited.   Mr. Wharton, in his work on Negli-
gence, supports the same proposition, and speaks of it
as a doctrine peculiar to this country.   This, however,
is not altogether correct, the leading English case on
the subject being that of Clarke v. Holmes, 7 Hurl. &
N. 942.   The same doctrine is supported by the follow-
ing decisions:   ''McGowan v. St. Louis & Iron
Mountain Railroad Co., 61 Mo. 528; Conroy v. Vulcan
Iron Works, 6 Mo. Ct. App. 102; Greenleaf v. Ill. Cen-
tral Railroad Co., 29 Iowa, 14; Patterson v. P. & C.
Railroad Co., 76 Pa. 389; Laning v. N. Y. C. Rail-
road Co., 49 N. Y. 521.

The doctrine of the master's liability to the serv-
ant for accidents resulting from the use of defective
machinery is thus laid down by Mr. Justice HARLAN in
the case of Hough v. Railroad Co., 100 U. S. 213: ''If
the servant of such a company, who has knowledge of
the defects in the machinery, gives notice thereof to
the proper officer, and is promised that they shall
remedy it, his subsequent use of it, on the well grounded
belief that it would be put in proper condition within
a reasonable time, does not necessarily, or as a matter
of law, make him guilty of contributory negligence.
It is a question for the jury whether, in relying upon
such promise, and using the machinery after he knew
its defective and insufficent condition, he was in the
exercise of due care.   The burden of proof in such
case is upon the company to show contributory negli-
gence.''   Nor can the master shield himself from

responsibility for injury growing out of the use of
defective machinery by showing that the negligence of
a fellow servant contributed to it.   Where the injury
is the result in part of the negligence of a fellow
servant, and in part the negligence of the master, the
latter is liable.   In the case of Tennessee Coal, Iron &
W. Railroad Co. v. Kyle, 8 So. Rep. (Ala.) 764, the
accident resulted from a collision between an engine
(running without a cowcatcher or pilot) and a cow,
and the company was held to be liable.   In the case of
Town v. Michigan Cent. Railroad Co., 84 Mich. 214, 665,
the plaintiff, an engineer, was injured by running into
an open switch.   The switch had some months before
been abandoned, and the lights taken down. Shortly
previous to the accident, however, the switch had been
reopened, but the lights had not been replaced.   The
company contended that the absence of the light was
not the proximate cause of the accident; that if the
switch had been locked the engine would have passed
over safely; and that the opening or unlocking of the
switch was caused either by the intermeddling of a
stranger, or by the negligence of a fellow servant of
the plaintiff, and that in either event he could not re-
cover.   But the court held that, if the lights would
have prevented the accident by giving timely warning
of the condition of the switch, their absence was just
as much the proximate cause of the accident as the
unlocking or turning of the switch, "and if they were
concurrent causes the defendant would be liable."   In
Cone v. Railroad Co., 81 N. Y. 206, the company was
held liable for an accident resulting from the sudden
starting of a locomotive, caused by its being out of
repair.   In that case, as in this, the doctrine of the
negligence of a fellow servant (the engineer in charge)
was invoked.   If he had been careful, it was alleged,
he might have prevented the accident.   But the court
held otherwise, saying:   "If this doctrine is accepted,

it will loosen the rule of responsibility, which now bears none too closely upon corporate conduct." In Elmer v. Locke, 125 Mass. 575, the injury was the combined result of the defective construction of trestle-work and the negligence of a fellow servant. The defendant was held liable, the court holding that "it does not exonerate him from the consequences of a failure in the performance of his duty, if such failure contributed to the injury, to show that if others for whom he was not responsible had done their duty the accident would not have occurred;" citing 10 Gray, 274; 11 Allen, 560; 97 Mass. 361; 111 Mass. 136. To the same effect is the case of Franklin v. Winona & St. Paul R'y Co., 37 Minn. 409. The same defense as in this case was attempted to be set up in the case of Ellis v. N. Y., L. E. & W. R'y Co., 95 N. Y. 546, but the court said: "This rule [the fellow servant rule], however, has no application if the company has at the same time disregarded its obligation to provide a suitable roadbed or engine or cars." The following authorities also support the same proposition: 78 Mich. 513; 46 Wis. 497; 29 Kan. 149; 10 Gray, 281; 73 N. Y. 38; 5 Vroom (N. J.) 551; 1 McCrary, 516; 76 N. C. 320; 100 N. Y. 516. Indeed, the doctrine of the master's liability, where his negligence contributes to the accident, is settled by such an unbroken chain of authorities as to lead the learned author of the notes to English and American railroad cases to declare: "The cases approving this proposition are numerous, and the doctrine is supported with a unanimity not to be found among the authorities on any other branch of the law of fellow servants." 44 Am. & Eng. R. R. Cases, 623. This doctrine "has been so often asserted by the courts of the highest character as to be no longer an open question." 48 Am. & Eng. R. R. Cases, 335. It is a cruel and inhuman doctrine that the employer, though he is aware that his own neglect to

furnish the proper safeguards for the lives and limbs of those in his employment, puts them in constant hazard of injury, is not to be held accountable to those employees, who, serving under him, under such circumstances, are injured by his neglect and omissions." Id.

The fatal error, which, in my opinion, lurks in the doctrine propounded by the majority of the court, consists: First, in the application of the doctrine of fellow servants, in a qualified sense, at least, to the relation of master and servant; and, second, in the application of the doctrine of proximate and remote, mediate and immediate cause, to cases wherein the injury is the result in part of the negligence of the master and in part of that of the servant. I affirm without hesitation that, wherever the facts of the case demonstrate that the negligence of the master contributed to the accident, negligence is to be regarded, as a matter of law, as direct and proximate. This doctrine is laid down without qualification by the supreme court of the United States in the case of Grand Trunk Railroad Co. v. Cummings, 106 U. S. 702, where the court say: "In the instruction given we find no error. It was in effect that, if the negligence of the company contributed to, that is to say, had a share in producing the injury, the company was liable, even though the negligence of a fellow servant of Cummings was contributory also. If the negligence of the company contributed to, it must necessarily have been an immediate cause of, the accident, and it is no defense that another was likewise guilty of wrong." The only possible escape from this unbroken line of authorities is to say that, notwithstanding the declaration of plaintiff in error that her late husband came to his death "also by and through the negligence, carelessness, default, and improper conduct and wrongful act of the defendant, in defaulting, refusing, and neglect-

ing to furnish a proper caboose and way car," yet this court will determine, as a matter of fact, that the alleged defect in the way car contributed nothing whatever to the accident; that, even if the deceased had been provided with a proper way car, the result would have been the same. I insist that this and like questions are matters for the jury. "The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or legal knowledge. It is to be determined as a fact, in view of all the circumstances and facts attending it." Milwaukee & St. Paul R'y Co. v. Kellogg, 94 U. S. 474.